TRACY L. WILKISON
Acting United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
ARON KETCHEL (Cal. Bar No. 250345)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8452/1019
    Facsimile: (213) 894-0141
    E-mail:    thomas.rybarczyk@usdoj.gov
               aron.ketchel@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

FILED
CLERK, U.S. DISTRICT COURT

7/28/2021

CENTRAL DISTRICT OF CALIFORNIA
BY: ___JB___ DEPUTY

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,

        Plaintiff,

            v.

HELIOS RAPHAEL DAYSPRING,
  aka "Bobby Dayspring,"

        Defendant.

No. CR  2:21-cr-00343-AB

PLEA AGREEMENT FOR DEFENDANT
HELIOS RAPHAEL DAYSPRING

    1.   This constitutes the plea agreement between HELIOS RAPHAEL
DAYSPRING ("defendant") and the United States Attorney's Office for
the Central District of California ("the USAO") in the investigation
of federal program bribery in San Luis Obispo County and tax evasion
in San Luis Obispo and Santa Barbara Counties.  This agreement is
limited to the USAO and cannot bind any other federal, state, local,
or foreign prosecuting, enforcement, administrative, or regulatory
authorities.

                    DEFENDANT'S OBLIGATIONS

    2.   Defendant agrees to:

1       a.   Give up the right to indictment by a grand jury and,

2 at the earliest opportunity requested by the USAO and provided by the

3 Court, appear and plead guilty to a two-count information in the form

4 attached to this agreement as Exhibit A or a substantially similar

5 form, which charges defendant with federal program bribery, in

6 violation of 18 U.S.C. § 666(a)(2), and subscribing to a false income

7 tax return, in violation of 26 U.S.C. § 7206(1).

8       b.   Not contest facts agreed to in this agreement.

9       c.   Abide by all agreements regarding sentencing contained

10 in this agreement.

11       d.   Appear for all court appearances, surrender as ordered

12 for service of sentence, obey all conditions of any bond, and obey

13 any other ongoing court order in this matter.

14       e.   Not commit any crime; however, offenses that would be

15 excluded for sentencing purposes under United States Sentencing

16 Guidelines ("U.S.S.G." or "Sentencing Guidelines") § 4A1.2(c) are not

17 within the scope of this agreement.

18       f.   Be truthful at all times with the United States

19 Probation and Pretrial Services Office and the Court.

20       g.   Pay the applicable special assessments at or before

21 the time of sentencing unless defendant has demonstrated a lack of

22 ability to pay such assessments.

23       h.   Defendant admits that he underreported his individual

24 taxable income by approximately $9 million, collectively for the tax

25 years 2014, 2015, 2016, 2017, and 2018, resulting in a tax loss in

26 the agreed amount of $3,438,793.  Defendant agrees that:

27       i.   Defendant will make his best efforts to pay to

28 the Fiscal Clerk of the Court at or before sentencing all additional

taxes assessed by the Internal Revenue Service ("IRS") pursuant to the closing agreement referred to in paragraph 2(h); and, will make his best efforts to promptly pay to the Fiscal Clerk of the Court all additional taxes thereafter determined by the IRS to be owing as a result of any computational error.  Payments may be made to the Clerk, United States District Court, Fiscal Department, 255 East Temple Street, Room 1178, Los Angeles, California 90012.

        ii.  Defendant will not file any claim for refund of taxes, penalties, or interest for amounts as set forth in the closing agreement, referred to in paragraph 2(h)(iv), in connection with this plea agreement.

        iii. Defendant agrees that he is liable for the civil fraud penalty imposed by the Internal Revenue Code, 26 U.S.C. § 6663, on the understatements of his personal income tax liability for 2014, 2015, 2016, 2017, and 2018.

        iv.  Defendant will work in good faith with the IRS to enter into a closing agreement, at or before the time of sentencing, which will be consistent with this plea agreement and permit the IRS to assess and collect the deficiency in tax liabilities for the tax years 2014 through 2018.  Defendant will also agree, pursuant to such closing agreement, that the IRS may assess the civil fraud penalties and statutory interest on the tax liabilities, as provided by law.

        v.   Defendant gives up any and all objections that could be asserted to the Examination Division of the IRS receiving materials or information obtained during the criminal investigation of this matter, including materials and information obtained through grand jury subpoenas.

3.    Defendant further agrees to cooperate fully with the USAO, the Federal Bureau of Investigation and IRS, and, as directed by the USAO, any other federal, state, local, or foreign prosecuting, enforcement, administrative, or regulatory authority.  This cooperation requires defendant to:

a.    Respond truthfully and completely to all questions that may be put to defendant, whether in interviews, before a grand jury, or at any trial or other court proceeding.

b.    Attend all meetings, grand jury sessions, trials or other proceedings at which defendant's presence is requested by the USAO or compelled by subpoena or court order.

c.    Produce voluntarily all documents, records, or other tangible evidence relating to matters about which the USAO, or its designee, inquires.

4.    For purposes of this agreement: (1) "Cooperation Information" shall mean any statements made, or documents, records, tangible evidence, or other information provided, by defendant pursuant to defendant's cooperation under this agreement or pursuant to the letter agreement previously entered into by the parties dated June 11, 2020 (the "Letter Agreement"); and (2) "Plea Information" shall mean any statements made by defendant, under oath, at the guilty plea hearing and the agreed to factual basis statement in this agreement.

THE USAO'S OBLIGATIONS

5.    The USAO agrees to:

a.    Not contest facts agreed to in this agreement.

b.    Abide by all agreements regarding sentencing contained in this agreement.

4

1          c.   At the time of sentencing, provided that defendant

2    demonstrates an acceptance of responsibility for the offenses up to

3    and including the time of sentencing, recommend a two-level reduction

4    in the applicable Sentencing Guidelines offense level, pursuant to

5    U.S.S.G. § 3E1.1, and recommend and, if necessary, move for an

6    additional one-level reduction if available under that section.

7          d.   At the time of sentencing, provided that defendant

8    demonstrates an acceptance of responsibility for the offenses up to

9    and including the time of sentencing, recommend a three-level

10   downward variance.  This variance is based upon substantial

11   assistance defendant provided to the government related to this

12   investigation, but which cannot be accounted for pursuant to U.S.S.G.

13   § 5K1.1.

14         e.   Recommend that defendant be sentenced to a term of

15   imprisonment no higher than the low-end of the applicable Sentencing

16   Guidelines range, as determined by the USAO.  For purposes of this

17   agreement, the low-end of the Sentencing Guidelines range is that

18   defined by the Sentencing Table in U.S.S.G. Chapter 5, Part A.

19         f.   Not further criminally prosecute defendant for any

20   additional violations known to the USAO at the time of the plea

21   arising out of defendant's conduct (i) described in the Information

22   or (ii) described in the Factual Basis.

23      6.   The USAO further agrees:

24         a.   Not to offer as evidence in its case-in-chief in the

25   above-captioned case or any other criminal prosecution that may be

26   brought against defendant by the USAO, or in connection with any

27   sentencing proceeding in any criminal case that may be brought

28   against defendant by the USAO, any Cooperation Information.

Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; and (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury.

     b.   Not to offer as evidence in its case-in-chief in the above-captioned case or any other criminal prosecution that may be brought against defendant by the USAO, any Cooperation Information. Defendant agrees, however, that the USAO may use both Cooperation Information and Plea Information: (1) to obtain and pursue leads to other evidence, which evidence may be used for any purpose, including any criminal prosecution of defendant; (2) to cross-examine defendant should defendant testify, or to rebut any evidence offered, or argument or representation made, by defendant, defendant's counsel, or a witness called by defendant in any trial, sentencing hearing, or other court proceeding; (3) in any criminal prosecution of defendant for false statement, obstruction of justice, or perjury; and (4) at defendant's sentencing. Defendant understands that Cooperation Information will be disclosed to the United States Probation and Pretrial Services Office and the Court.

     c.   In connection with defendant's sentencing, to bring to the Court's attention the nature and extent of defendant's cooperation.

1          d.    If the USAO determines, in its exclusive judgment,

2    that defendant has both complied with defendant's obligations under

3    paragraphs 2 and 3 above and provided substantial assistance to law

4    enforcement in the prosecution or investigation of another

5    ("substantial assistance"), to move the Court pursuant to U.S.S.G.

6    § 5K1.1 to fix an offense level and corresponding guideline range

7    below that otherwise dictated by the sentencing guidelines, and to

8    recommend a term of imprisonment within this reduced range.

9                    DEFENDANT'S UNDERSTANDINGS REGARDING COOPERATION

10        7.    Defendant understands the following:

11        a.    Any knowingly false or misleading statement by

12   defendant will subject defendant to prosecution for false statement,

13   obstruction of justice, and perjury and will constitute a breach by

14   defendant of this agreement.

15        b.    Nothing in this agreement requires the USAO or any

16   other prosecuting, enforcement, administrative, or regulatory

17   authority to accept any cooperation or assistance that defendant may

18   offer, or to use it in any particular way.

19        c.    Defendant cannot withdraw defendant's guilty pleas if

20   the USAO does not make a motion pursuant to U.S.S.G. § 5K1.1 for a

21   reduced guideline range or if the USAO makes such a motion and the

22   Court does not grant it or if the Court grants such a USAO motion but

23   elects to sentence above the reduced range.

24        d.    At this time the USAO makes no agreement or

25   representation as to whether any cooperation that defendant has

26   provided or intends to provide constitutes or will constitute

27   substantial assistance.  The decision whether defendant has provided

28

                                   7

substantial assistance will rest solely within the exclusive judgment of the USAO.

e.    The USAO's determination whether defendant has provided substantial assistance will not depend in any way on whether the government prevails at any trial or court hearing in which defendant testifies or in which the government otherwise presents information resulting from defendant's cooperation.

<u>NATURE OF THE OFFENSES</u>

8.    Defendant understands that for defendant to be guilty of the crime charged in count one, that is, federal program bribery, in violation of Title 18, United States Code, Section 666(a)(2), the following must be true: (1) Defendant corruptly gave, offered, or agreed to give something of value to a person; (2) Defendant intended to influence or reward an agent of a local government -- here, the County of San Luis Obispo -- in connection with any business, transaction, or series of transactions of that local government involving anything of value of $5,000 or more; and (3) The County of San Luis Obispo received, in any one year period, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

9.    Defendant understands that for defendant to be guilty of the crime charged in Count Two, that is, subscribing to a false income tax return, in violation of Title 26, United States Code, Section 7206(1), the following must be true: (1) defendant signed and caused to be filed a tax return that he knew contained false or incorrect information as to a material matter; (2) the return contained a written declaration that it was being signed subject to

8

the penalties of perjury; and (3) in causing the filing of the false tax return, defendant acted willfully.  A matter is material if it had a natural tendency to influence, or was capable of influencing, the decisions or activities of the IRS. A defendant acts willfully when defendant knows that federal tax law imposed a duty on defendant and defendant intentionally and voluntarily violated that duty.

## PENALTIES AND RESTITUTION

10.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of 18 U.S.C. § 666(a)(2) is: 10 years' imprisonment; a three-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

11.   Defendant understands that the statutory maximum sentence that the Court can impose for a violation of Title 26, United States Code, Section 7206(1), is: three years' imprisonment; a one-year period of supervised release; a fine of $250,000 or twice the gross gain or gross loss resulting from the offense, whichever is greatest; and a mandatory special assessment of $100.

12.   Defendant understands, therefore, that the total maximum sentence for both of the offenses to which defendant is pleading guilty is: 13 years' imprisonment; a three-year period of supervised release; a fine of $500,000 or twice the gross gain or gross loss resulting from the offenses, whichever is greatest; and a mandatory special assessment of $200.

13.   Defendant understands and agrees that pursuant to 18 U.S.C. § 3663(a)(3), the Court: (a) may order defendant to pay restitution in the amount of $3,438,795, which is the agreed total

9

tax loss based upon the count of conviction and relevant conduct; and (b) must order defendant to pay the costs of prosecution, if any, which may be in addition to the statutory maximum fine stated above. Defendant agrees that restitution is due and payable immediately after the judgment is entered and is subject to immediate enforcement, in full, by the United States. If the Court imposes a schedule of payments, Defendant agrees that the schedule of payments is a schedule a minimum payment due, and that the payment schedule does not prohibit or limit the methods by which the United States may immediately enforce the judgment in full. The IRS will use the amount of restitution ordered as the basis for a civil assessment under 26 U.S.C. § 6201(a)(4). Defendant does not have the right to challenge the amount of this restitution-bases assessment. *See* 26 U.S.C. § 6201(a)(4)(C). Neither the existence of a restitution payment schedule nor Defendant's timely payment of restitution according to the schedule will preclude the IRS from immediately collecting the full amount of the restitution-based assessment.

14.   Defendant understands that supervised release is a period of time following imprisonment during which defendant will be subject to various restrictions and requirements.  Defendant understands that if defendant violates one or more of the conditions of any supervised release imposed, defendant may be returned to prison for all or part of the term of supervised release authorized by statute for the offense that resulted in the term of supervised release, which could result in defendant serving a total term of imprisonment greater than the statutory maximum stated above.

15.   Defendant understands that, by pleading guilty, defendant may be giving up valuable government benefits and valuable civic

rights, such as the right to vote, the right to possess a firearm, the right to hold office, and the right to serve on a jury. Defendant understands that he is pleading guilty to a felony and that it is a federal crime for a convicted felon to possess a firearm or ammunition. Defendant understands that the convictions in this case may also subject defendant to various other collateral consequences, including but not limited to revocation of probation, parole, or supervised release in another case and suspension or revocation of a professional license. Defendant understands that unanticipated collateral consequences will not serve as grounds to withdraw defendant's guilty pleas.

16. Defendant and his counsel have discussed the fact that, and defendant understands that, if defendant is not a United States citizen, the convictions in this case makes it practically inevitable and a virtual certainty that defendant will be removed or deported from the United States. Defendant may also be denied United States citizenship and admission to the United States in the future. Defendant understands that while there may be arguments that defendant can raise in immigration proceedings to avoid or delay removal, removal is presumptively mandatory and a virtual certainty in this case. Defendant further understands that removal and immigration consequences are the subject of a separate proceeding and that no one, including his attorney or the Court, can predict to an absolute certainty the effect of his convictions on his immigration status. Defendant nevertheless affirms that he wants to plead guilty regardless of any immigration consequences that his pleas may entail, even if the consequence is automatic removal from the United States.

1                              FACTUAL BASIS

2       17.   Defendant admits that defendant is, in fact, guilty of the

3 offenses to which defendant is agreeing to plead guilty.  Defendant

4 and the USAO agree to the statement of facts provided below and agree

5 that this statement of facts is sufficient to support the pleas of

6 guilty to the charges described in this agreement and to establish

7 the Sentencing Guidelines factors set forth in paragraph 20 below but

8 is not meant to be a complete recitation of all facts relevant to the

9 underlying criminal conduct or all facts known to either party that

10 relate to that conduct.

11      At all times relevant to the charges in the Information,

12 defendant owned, operated, and/or controlled businesses specializing

13 in cannabis cultivation and distribution in the Central District of

14 California, including the County of San Luis Obispo ("County.")

15 Defendant owned, operated, had a controlling interest, and/or a

16 financial stake in multiple farms that grew and cultivated cannabis

17 in the County (collectively, "Cannabis Farms").  Defendant also owned

18 or had a controlling interest or financial stake in businesses that

19 sold cannabis commercially to the public, including a dispensary in

20 Grover Beach, California ("Grover Beach Dispensary").  All of

21 defendant's farms that cultivated cannabis required County approvals

22 to operate, and the Grover Beach Dispensary required approvals from

23 the City of Grover Beach (the "City") to operate.

24      **County Supervisor 1 Bribery Scheme**

25      County Supervisor 1 was a County Supervisor, an elected position

26 within the County.  The County's Board of Supervisors was compromised

27 of five supervisors.  As a County Supervisor, County Supervisor 1

28 voted on matters appearing before the County Board of Supervisors,

including matters that affected defendant's Cannabis Farms, and had influence over matters occurring within the County and its departments.  The County was a local government that received, every calendar year between 2016 and 2020, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

Beginning in or about the Fall of 2016 and continuing until on or about November 2019, defendant paid County Supervisor 1 approximately $29,000 in unreported cash payments.  Defendant provided County Supervisor 1 the cash payments himself, in-person, and with no one else present.  During this same period, defendant also provided County Supervisor 1 cannabis products on multiple occasions free of charge and paid for multiple meals for County Supervisor 1.  Defendant provided County Supervisor 1 this stream of benefits with the understanding that as opportunities arose, County Supervisor 1 would do, amongst other things, the following: (a) vote on cannabis legislation benefiting his Cannabis Farms, (b) advocacy of other public officials in support of cannabis legislation benefiting his Cannabis Farms, and (c) disclose non-public County information concerning cannabis-related issues, all of which benefitted defendant and defendant's businesses.

**Official Acts Regarding Extending Abeyances on Defendant's Cannabis Farms**

One of the matters for which defendant sought official action from County Supervisor 1 involved the extension of an abeyance on enforcement action on defendant's Cannabis Farms, as the County considered defendant's applications for permits to cultivate cannabis on the Cannabis Farms.  In other words, defendant sought to ensure

his Cannabis Farms could continue to operate, notwithstanding a county law prohibiting cannabis cultivation farms from operating without the appropriate county and state approvals. If the abeyances on enforcement action were to have lapsed, the County may have required the Cannabis Farms defendant purchased, controlled, and/or took an interest to shut down, resulting in significant financial losses to defendant well in excess of $5,000.

### Regulatory Background on County Cannabis Cultivation Law

On September 20, 2016, the County established a moratorium on cultivation of cannabis in the County's unincorporated areas (the "September 2016 Ordinance"). The September 2016 Ordinance, however, also provided a temporary exemption from enforcement for cannabis cultivators who had existing farms and registered with the County pursuant to the ordinance. Accordingly, cannabis cultivators who qualified for the exemption under the September 2016 Ordinance could operate lawfully as there was a temporary abeyance on enforcement. Those cultivators that did not qualify for an exemption risked being shut down by the County. This temporary abeyance on enforcement action expired on September 19, 2018.

### Defendant Begins Paying County Supervisor 1 and Receives His Vote for a Continued Abeyance on Enforcement Action

Starting some time in Fall 2016, defendant began paying County Supervisor 1 cash, starting first with $1,000. Prior to doing so, at an event in October 2016, defendant provided County Supervisor 1 three $1,000 money orders made out in his name and the name of two associates. Those money orders were subsequently deposited into County Supervisor 1's personal account. Later, in October 2016, following County Supervisor 1's solicitation, defendant provided

14

1  County Supervisor 1 $3,000 in cash.  Over the next year, defendant
2  provided County Supervisor 1 another cash payment of $5,000.

3        On November 27, 2017, the County's Board of Supervisors voted
4  5-0 to establish a limited abeyance of enforcement policy for those
5  cannabis cultivators who had registered with the County in the
6  County's Inland Zone pursuant to the September 2016 Ordinance.  This
7  abeyance on enforcement action expired on December 31, 2018.  County
8  Supervisor 1 voted in favor of the abeyance.

9        **Defendant Continued Paying County Supervisor 1 Cash and Asked**
10       **Him To Vote on Continued Abeyances of Enforcement Action in 2018**
11       **and 2019**

12       Sometime in early 2018, defendant provided County Supervisor 1
13  approximately $5,000 in cash as well as cannabis-related products.

14       On December 10, 2018, defendant and County Supervisor 1
15  discussed the importance of having County Supervisor 1 and other
16  County supervisors approve the continued abeyance on enforcement
17  action and how a lapse in the abeyance would affect his Cannabis
18  Farms.  Specifically, defendant told County Supervisor 1 in a text
19  message that "it's really important u guys extend the timeframe for
20  submission and don't allow other people in yet" referring to the
21  County's impending vote on December 11, 2018 to extend the abeyances
22  on enforcement action against cannabis cultivators.  Defendant
23  further told County Supervisor 1 via text message that "[t]his
24  affects all the properties that I just got investment into every one
25  of them.  If I am not deemed complete and get accepted [conditional
26  use permits] I don't get my ownership in the land."  County
27  Supervisor 1 responded: "Got it.  We'll see what we can
28  do.  Extension of timeframe seems reasonable and probably no one else

15

1  in until everyone has been deemed complete." Defendant responded

2  that County Supervisor 1 was the "man." On December 11, 2018, the

3  County's Board of Supervisors voted 5-0 to approve an extension of

4  the abeyances with County Supervisor 1 seconding the motion and

5  voting in favor of the resolution. On December 12, 2018, County

6  Supervisor 1 told defendant via text message "[w]e extended abeyance

7  yesterday" to which defendant replied: "Thank god . . .". In early

8  2019, defendant provided County Supervisor 1 approximately $5,000 in

9  cash outside a restaurant in Avila Beach, California.

10      On November 15, 2019, defendant and County Supervisor 1 arranged

11  to meet at a Pismo Beach restaurant for dinner for which defendant

12  paid. After dinner, defendant gave County Supervisor 1 $5,000 in

13  cash.

14      At the December 10, 2019, County Board of Supervisors' meeting,

15  defendant, business associates of defendant, and other cannabis

16  cultivators spoke during the public comment period in support of

17  extending the cannabis abeyance extension. After these comments,

18  County Supervisor 1, in his official capacity, advocated for and

19  advised the Board of Supervisors to pass the cannabis abeyance

20  extension and moved to place it on the agenda for the following

21  week's Board of Supervisors' meeting. The agenda motion failed.

22      At the December 17, 2019, County Board of Supervisors' meeting,

23  defendant, business associates of defendant, and other cannabis

24  cultivators spoke during the public comment period in support of

25  extending the cannabis abeyance extension. After these comments,

26  County Supervisor 1, in his official capacity, moved to place on the

27  agenda the cannabis abeyance extension for the January 14, 2020 Board

28  of Supervisors' meeting. County Supervisor 1 voted in favor and the

motion passed 3-2.  On January 14, 2020, the County Supervisor 1 voted in favor of the County approving the cannabis abeyance extension, which passed by a 3-2 vote.

**County Supervisor 1's Efforts to Preserve Defendant's Cannabis Farms**

At the March 26, 2019, County Board of Supervisor's meeting, the Board of Supervisors took 16 straw votes relating to cannabis regulation.  Amongst the straw votes taken during the meeting was a vote to ban all outdoor cannabis cultivation, which, if enacted, would have caused significant financial loss to defendant and the Cannabis Farms, many of which grew cannabis outdoors.  Throughout the meeting, County Supervisor 1 sent text messages to defendant and Employee 1, an employee of one of defendant's companies, updating them as the votes were taken.  In particular, County Supervisor 1 explained how he had to work to prevent another County Supervisor from pushing the law banning all outdoor cannabis cultivation.  At one point, County Supervisor 1 wrote that he "had to keep these fuckers [other County supervisors] from going way beyond and it is exhausting!  Where's the industry [financial] support for my reelection??" to which defendant responded writing that "[w]e are the industry" and "[w]ere (sic) all [you] need lol."

On March 29, 2019, County Supervisor 1 sent defendant and Employee 1 a text message asking: "[t]omorrow is your favorite County Supervisor's birthday... what are you two [Cannabis] Kings gonna do for him???"  After Employee 1 asked if they could take County Supervisor 1 to dinner or lunch, defendant said they would take County Supervisor 1 to dinner and asked County Supervisor 1 to pick the location and time.  On March 30, 2019, defendant and Employee 1

had dinner with County Supervisor 1 at a restaurant in Pismo Beach, California.  After dinner, which defendant paid for, defendant met with County Supervisor 1 and gave County Supervisor 1 $5,000 in cash.

On April 6, 2019, County Supervisor 1 told defendant and Employee 1 that "[y]our industry should give me one giant French kiss wrapped in money after my work today."

In June 2019, defendant and Employee 1 held a political fundraiser at County Supervisor 1's request at defendant's home where over $13,000 was raised.

**Attempted Mayor 1 Bribery Scheme**

Mayor 1 was the City's mayor, an elected position within the City.  As the City's mayor, Mayor 1 voted on matters appearing before the City Council, including matters that affected the Grover Beach Dispensary.  Mayor 1 was also one of the two City council members on the City's subcommittee charged with overseeing the City's expansion of medical and commercial cannabis.  The City was a local government that received, every calendar year between 2016 and 2018, benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of Federal assistance.

In 2017, the City began accepting applications from companies seeking to dispense medical cannabis.  In 2018, the City allowed those companies that obtained dispensary permits to sell cannabis commercially.  Defendant sought permits for two dispensaries, including the Grover Beach Dispensary.  A City dispensary permit was worth substantially more than $5,000, in light of the anticipated income generated from a cannabis dispensary in the City.

1    In September 2017, defendant, Mayor 1, and Business Partner 1
2    (one of defendant's business's partners), met at a restaurant in
3    Arroyo Grande, California.  At the time, defendant and Business
4    Partner 1 had already submitted their applications for two permits in
5    the City, including for the Grover Beach Dispensary.  On their way to
6    the meeting, Business Partner 1 told defendant that Mayor 1 had been
7    pushing Business Partner 1 for a bribe in exchange for their cannabis
8    permits.  Business Partner 1 told defendant that this meeting was
9    their chance to bribe Mayor 1

10    During the meal, Mayor 1 left the table to use the restroom.
11    While Mayor 1 was away from the table, Business Partner 1 told
12    defendant this was their chance to offer Mayor 1 a bribe.  When Mayor
13    1 returned to the table, defendant had entered the number 100,000 on
14    the calculator app on his cellular phone, showed it to Mayor 1, and
15    said it was for "two."  Defendant wanted to convey to Mayor 1 that
16    defendant and Business Partner 1 were prepared to pay $100,000 to
17    Mayor 1 if Mayor 1 used Mayor 1's official position to secure two
18    cannabis dispensary permits for defendant and Business Partner 1.
19    Mayor 1 did not respond to the offer at dinner.

20    The City later awarded a single dispensary permit to the Grover
21    Beach Dispensary.  After the City awarded the permit for the Grover
22    Beach Dispensary, defendant asked Business Partner 1 if they owed
23    Mayor 1 $50,000 because they received one of the two requested
24    permits.  Business Partner 1 told defendant that they did not owe any
25    money to Mayor 1 because their proposed deal required that defendant
26    and Business Partner 1 receive two permits.

27    **Defendant's Falsely Subscribed His Tax Returns**

28    On or about October 15, 2019, in San Luis Obispo County, within

1  the Central District of California, defendant caused his U.S.
2  Individual Tax Return, Form 1040, for 2018, to be filed
3  electronically with the IRS.  Prior to doing so, defendant had
4  authorized his tax preparer to file his return electronically for him
5  with the IRS.  Defendant willfully signed and subscribed to this
6  Income Tax Return, which contained a written declaration that it was
7  being signed under penalty of perjury and which defendant knew
8  contained materially false information, namely, on line 10, defendant
9  falsely reported his taxable income was $1,262,894, when in fact, as
10  defendant then knew, his actual taxable income in 2018 was
11  substantially greater.  In fact, defendant's actual income in 2018
12  was more than $6.5 million, resulting in a tax loss to the IRS of
13  approximately $2,048,950.  Defendant understood that the false and
14  fraudulent income for 2018 was material in that it affected the IRS's
15  calculation of the amount of income tax owed. Defendant acted
16  willfully in that defendant knew that the law required him to report
17  all income accurately, and to pay all income tax that was due and
18  owing. Defendant voluntarily and intentionally violated that duty.
19      On defendant's U.S. Individual Income Tax Returns for 2014,
20  2015, 2016, and 2017, defendant substantially underreported his
21  income, causing an additional tax loss to the IRS of approximately
22  $1,389,843.
23      As a result of defendant's underreporting of his income in 2014
24  through 2018, defendant caused the IRS approximately $3,438,793 in
25  lost tax revenue.
26                          SENTENCING FACTORS
27      18.  Defendant understands that in determining defendant's
28  sentence the Court is required to calculate the applicable Sentencing

Guidelines range and to consider that range, possible departures under the Sentencing Guidelines, and the other sentencing factors set forth in 18 U.S.C. § 3553(a). Defendant understands that the Sentencing Guidelines are advisory only, that defendant cannot have any expectation of receiving a sentence within the calculated Sentencing Guidelines range, and that after considering the Sentencing Guidelines and the other § 3553(a) factors, the Court will be free to exercise its discretion to impose any sentence it finds appropriate up to the maximum set by statute for the crimes of conviction.

   19. Defendant and the USAO agree to the following applicable Sentencing Guidelines factors:

Count One

| | | |
|---|---|---|
| Base Offense Level: | 12 | U.S.S.G. § 2C1.1(a)(2) |
| -Value of the Bribes: | +8 | U.S.S.G. § 2C1.1(b)(2) |
| -Involved Elected Public Official | +4 | U.S.S.G. § 2C1.1(b)(3) |

Count Two

| | | |
|---|---|---|
| Base Offense Level: | 22 | U.S.S.G. § 2T1.1(a)(1)<br>U.S.S.G. § 2T4.1(I) |
| Grouping | +2 | U.S.S.G. § 3D1.4 |
| Adjusted Offense Level: | 26 | |
| Government Variance: | -3 | |
| Acceptance of Responsibility: | -3 | U.S.S.G. § 3E1.1(a),(b) |
| Total Offense Level: | 20 | |

The USAO will agree to a two-level downward adjustment for acceptance of responsibility (and, if applicable, move for an additional one-

21

level downward adjustment under U.S.S.G. § 3E1.1(b)) only if the conditions set forth in paragraph 2 are met and if defendant has not committed, and refrains from committing, acts constituting obstruction of justice within the meaning of U.S.S.G. § 3C1.1, as discussed below. Subject to paragraph 30 below, defendant and the USAO agree not to seek, argue, or suggest in any way, either orally or in writing, that any other specific offense characteristics, adjustments, or departures relating to the offense level be imposed, with the exception that, as set forth in paragraph 6(d) above, the USAO, in its exclusive judgment, reserves the right to move the Court pursuant to U.S.S.G. § 5K1.1 to fix an offense level and corresponding guideline range below that otherwise dictated by the sentencing guidelines.  Defendant agrees, however, that if, after signing this agreement but prior to sentencing, defendant were to commit an act, or the USAO were to discover a previously undiscovered act committed by defendant prior to signing this agreement, which act, in the judgment of the USAO, constituted obstruction of justice within the meaning of U.S.S.G. § 3C1.1, the USAO would be free to seek the enhancement set forth in that section and to argue that defendant is not entitled to a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1, and to recommend a term of imprisonment within this reduced range.

20.  Defendant understands that there is no agreement as to defendant's criminal history or criminal history category.

21.  Defendant and the USAO reserve the right to argue for a sentence outside the sentencing range established by the Sentencing Guidelines based on the factors set forth in 18 U.S.C. § 3553(a)(1), (a)(2), (a)(3), (a)(6), and (a)(7).

## WAIVER OF CONSTITUTIONAL RIGHTS

22.   Defendant understands that by pleading guilty, defendant gives up the following rights:

a.   The right to persist in a plea of not guilty.

b.   The right to a speedy and public trial by jury.

c.   The right to be represented by counsel – and if necessary have the Court appoint counsel - at trial.  Defendant understands, however, that, defendant retains the right to be represented by counsel – and if necessary have the Court appoint counsel – at every other stage of the proceeding.

d.   The right to be presumed innocent and to have the burden of proof placed on the government to prove defendant guilty beyond a reasonable doubt.

e.   The right to confront and cross-examine witnesses against defendant.

f.   The right to testify and to present evidence in opposition to the charges, including the right to compel the attendance of witnesses to testify.

g.   The right not to be compelled to testify, and, if defendant chose not to testify or present evidence, to have that choice not be used against defendant.

h.   Any and all rights to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, and other pretrial motions that have been filed or could be filed.

## WAIVER OF APPEAL OF CONVICTION

23.   Defendant understands that, with the exception of an appeal based on a claim that defendant's guilty pleas were involuntary, by pleading guilty defendant is waiving and giving up any right to

appeal defendant's convictions on the offenses to which defendant is pleading guilty.  Defendant understands that this waiver includes, but is not limited to, arguments that the statutes to which defendant is pleading guilty are unconstitutional, and any and all claims that the statement of facts provided herein is insufficient to support defendant's pleas of guilty.

LIMITED MUTUAL WAIVER OF APPEAL OF SENTENCE

24.  Defendant agrees that, provided the Court imposes a term of imprisonment within or below the range corresponding to an offense level of 20 and the criminal history category calculated by the Court, defendant gives up the right to appeal all of the following: (a) the procedures and calculations used to determine and impose any portion of the sentence; (b) the term of imprisonment imposed by the Court; (c) the fine imposed by the Court, provided it is within the statutory maximum; (d) to the extent permitted by law, the constitutionality or legality of defendant's sentence, provided it is within the statutory maximum; (e) the amount and terms of any restitution order, provided it requires payment of no more than $3,438,793; (f) the term of probation or supervised release imposed by the Court, provided it is within the statutory maximum; and (g) any of the following conditions of probation or supervised release imposed by the Court: the conditions set forth in Amended General Order 20-04 of this Court; the drug testing conditions mandated by 18 U.S.C. §§ 3563(a)(5) and 3583(d); and the alcohol and drug use conditions authorized by 18 U.S.C. § 3563(b)(7).

25.  The USAO agrees that, provided all portions of the sentence are at or below the statutory maximum specified above, the USAO gives up its right to appeal any portion of the sentence, with the

24

exception that the USAO reserve the right to appeal the amount of restitution ordered if that amount is less than $3,438,793.

## RESULT OF WITHDRAWAL OF GUILTY PLEA

26. Defendant agrees that if, after entering guilty pleas pursuant to this agreement, defendant seeks to withdraw and succeeds in withdrawing defendant's guilty pleas on any basis other than a claim and finding that entry into this plea agreement was involuntary, then (a) the USAO will be relieved of all of its obligations under this agreement, including in particular its obligations regarding the use of Cooperation Information; and (b) in any investigation, criminal prosecution, or civil, administrative, or regulatory action, defendant agrees that any Cooperation Information and any evidence derived from any Cooperation Information shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, or any federal rule, that any Cooperation Information or any evidence derived from any Cooperation Information should be suppressed or is inadmissible.

## EFFECTIVE DATE OF AGREEMENT

27. This agreement is effective upon signature and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney.

## BREACH OF AGREEMENT

28. Defendant agrees that if defendant, at any time after the signature of this agreement and execution of all required certifications by defendant, defendant's counsel, and an Assistant United States Attorney, knowingly violates or fails to perform any of defendant's obligations under this agreement ("a breach"), the USAO

may declare this agreement breached.  For example, if defendant knowingly, in an interview, before a grand jury, or at trial, falsely accuses another person of criminal conduct or falsely minimizes defendant's own role, or the role of another, in criminal conduct, defendant will have breached this agreement.  All of defendant's obligations are material, a single breach of this agreement is sufficient for the USAO to declare a breach, and defendant shall not be deemed to have cured a breach without the express agreement of the USAO in writing.  If the USAO declares this agreement breached, and the Court finds such a breach to have occurred, then:

a.    If defendant has previously entered guilty pleas pursuant to this agreement, defendant will not be able to withdraw the guilty pleas.

b.    The USAO will be relieved of all its obligations under this agreement; in particular, the USAO: (i) will no longer be bound by any agreements concerning sentencing and will be free to seek any sentence up to the statutory maximum for the crimes to which defendant has pleaded guilty; and (ii) will no longer be bound by any agreement regarding the use of Cooperation Information and will be free to use any Cooperation Information in any way in any investigation, criminal prosecution, or civil, administrative, or regulatory action.

c.    The USAO will be free to criminally prosecute defendant for false statement, obstruction of justice, and perjury based on any knowingly false or misleading statement by defendant.

d.    In any investigation, criminal prosecution, or civil, administrative, or regulatory action: (i) defendant will not assert, and hereby waives and gives up, any claim that any Cooperation

Information was obtained in violation of the Fifth Amendment privilege against compelled self-incrimination; and (ii) defendant agrees that any Cooperation Information and any Plea Information, as well as any evidence derived from any Cooperation Information or any Plea Information, shall be admissible against defendant, and defendant will not assert, and hereby waives and gives up, any claim under the United States Constitution, any statute, Rule 410 of the Federal Rules of Evidence, Rule 11(f) of the Federal Rules of Criminal Procedure, or any other federal rule, that any Cooperation Information, any Plea Information, or any evidence derived from any Cooperation Information or any Plea Information should be suppressed or is inadmissible.

COURT AND UNITED STATES PROBATION AND PRETRIAL SERVICES

OFFICE NOT PARTIES

29.  Defendant understands that the Court and the United States Probation and Pretrial Services Office are not parties to this agreement and need not accept any of the USAO's sentencing recommendations or the parties' agreements to facts or sentencing factors.

30.  Defendant understands that both defendant and the USAO are free to: (a) supplement the facts by supplying relevant information to the United States Probation and Pretrial Services Office and the Court, (b) correct any and all factual misstatements relating to the Court's Sentencing Guidelines calculations and determination of sentence, and (c) argue on appeal and collateral review that the Court's Sentencing Guidelines calculations and the sentence it chooses to impose are not error, although each party agrees to maintain its view that the sentencing calculations set forth above

are consistent with the facts of this case.  This paragraph permits both the USAO and defendant to submit full and complete factual information to the United States Probation Office and the Court, even if that factual information may be viewed as inconsistent with the Factual Basis or Sentencing Factors agreed to in this agreement.

31.  Defendant understands that even if the Court ignores any sentencing recommendation, finds facts or reaches conclusions different from those agreed to, and/or imposes any sentence up to the maximum established by statute, defendant cannot, for that reason, withdraw defendant's guilty pleas, and defendant will remain bound to fulfill all defendant's obligations under this agreement.  Defendant understands that no one -- not the prosecutor, defendant's attorney, or the Court -- can make a binding prediction or promise regarding the sentence defendant will receive, except that it will be within the statutory maximum.

<u>NO ADDITIONAL AGREEMENTS</u>

32.  Defendant understands that, except as set forth herein, there are no promises, understandings, or agreements between the USAO and defendant or defendant's attorney, and that no additional promise, understanding, or agreement may be entered into unless in a writing signed by all parties or on the record in court.

///

///

///

///

1          PLEA AGREEMENT PART OF THE GUILTY PLEA HEARING

2          33.   The parties agree that this agreement will be considered

3    part of the record of defendant's guilty plea hearing as if the

4    entire agreement had been read into the record of the proceeding.

5    AGREED AND ACCEPTED

6    UNITED STATES ATTORNEY'S OFFICE
     FOR THE CENTRAL DISTRICT OF
7    CALIFORNIA

8    TRACY L. WILKISON
     Acting United States Attorney

9

10   _____              July 27, 2021
     THOMAS F. RYBARCYYK                       Date
11   ARON KETCHEL
     Assistant United States Attorneys

12   _____              6-24-21
13   HELIOS RAPHAEL DAYSPRING                  Date
     Defendant

14   _____              6-24-2021
15   SANDRA R. BROWN-BODNER                    Date
     ERIC D. SHEVIN
16   Attorneys for Defendant HELIOS
     RAPHAEL DAYSPRING
17

18   ///

19   ///

20   ///

21   ///

22

23

24

25

26

27

28

                              29

CERTIFICATION OF DEFENDANT

I have read this agreement in its entirety.  I have had enough time to review and consider this agreement, and I have carefully and thoroughly discussed every part of it with my attorney.  I understand the terms of this agreement, and I voluntarily agree to those terms. I have discussed the evidence with my attorney, and my attorney has advised me of my rights, of possible pretrial motions that might be filed, of possible defenses that might be asserted either prior to or at trial, of the sentencing factors set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines provisions, and of the consequences of entering into this agreement.  No promises, inducements, or representations of any kind have been made to me other than those contained in this agreement.  No one has threatened or forced me in any way to enter into this agreement.  I am satisfied with the representation of my attorney in this matter, and I am pleading guilty because I am guilty of the charges and wish to take advantage of the promises set forth in this agreement, and not for any other reason.

HELIOS RAPHAEL DAYSPRING
Defendant

6-24-21
Date

///
///
///
///

30

1

CERTIFICATION OF DEFENDANT'S ATTORNEY

2      I am HELIOS RAPHAEL DAYSPRING's attorney.  I have carefully and

3 thoroughly discussed every part of this agreement with my client.

4 Further, I have fully advised my client of his rights, of possible

5 pretrial motions that might be filed, of possible defenses that might

6 be asserted either prior to or at trial, of the sentencing factors

7 set forth in 18 U.S.C. § 3553(a), of relevant Sentencing Guidelines

8 provisions, and of the consequences of entering into this agreement.

9 To my knowledge: no promises, inducements, or representations of any

10 kind have been made to my client other than those contained in this

11 agreement; no one has threatened or forced my client in any way to

12 enter into this agreement; my client's decision to enter into this

13 agreement is an informed and voluntary one; and the factual basis set

14 forth in this agreement is sufficient to support my client's entry of

15 guilty pleas pursuant to this agreement.

16

17 SANDRA R. BROWN-BODNER                    6-24-2021
   Attorney for Defendant HELIOS            Date

18 RAPHAEL DAYSPRING

19

20

21

22

23

24

25

26

27

28

31

# EXHIBIT A

1

2

3

4

5

6

7

8                    UNITED STATES DISTRICT COURT

9              FOR THE CENTRAL DISTRICT OF CALIFORNIA

10   UNITED STATES OF AMERICA,          CR No.

11            Plaintiff,                I N F O R M A T I O N

12            v.                        [18 U.S.C. § 666(a)(2): Federal
                                        Program Bribery; 26 U.S.C.
13   HELIOS RAPHAEL DAYSPRING,          § 7206(1): Subscribing to a False
        aka "Bobby Dayspring,"          Income Tax Return]

14

15            Defendant.

16        The Acting United States Attorney charges:

17                      INTRODUCTORY ALLEGATIONS

18        At times relevant to this Information:

19   A.   RELEVANT PERSONS AND ENTITIES

20        1.   Defendant HELIOS RAPHAEL DAYSPRING, also known as "Bobby

21   Dayspring," owned, operated, and controlled businesses specializing

22   in cannabis cultivation and distribution in the Central District of

23   California, including San Luis Obispo County ("County").  Defendant

24   DAYSPRING owned, operated, and/or had a controlling interest in

25   multiple farms that grew and cultivated cannabis in the County

26   (collectively, "Cannabis Farms").

27        2.   The County was a local government that received, every

28   calendar year between 2016 and 2019, benefits in excess of $10,000

under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, and other form of Federal assistance.

3. The County was governed, in part, by its Board of Supervisors, which adopted legislation, adjudicated issues, held public hearings, set hearing agendas, and set policy in the County.

4. The Board of Supervisors was comprised of five members, all of whom represented a district within the County. Each district elected its own supervisor to represent it.

5. County Supervisor 1 was a County supervisor, an elected position within the County. As a County supervisor, County Supervisor 1 voted on matters appearing before the County Board of Supervisors, including matters that affected defendant DAYSPRING's Cannabis Farms, advocated for and against matters discussed at public hearings, and had influence over matters occurring within the County and its departments.

COUNT ONE

[18 U.S.C. § 666(a)(2)]

From in or about the Fall of 2016 to in or about January 2020, in San Luis Obispo County ("County"), within the Central District of California, defendant HELIOS RAPHAEL DAYSPRING, also known as "Bobby Dayspring," corruptly gave, offered, and agreed to give things of value to County Supervisor 1, an agent of the County, intending to influence and reward County Supervisor 1 in connection with business, transactions, and series of transactions of the County, having a value of $5,000 or more. Specifically, defendant DAYSPRING gave County Supervisor 1 approximately $29,000 in cash, over a series of payments, and $3,000 in postal money orders, with the understanding that when opportunities arose, County Supervisor 1 would take official acts to benefit Defendant DAYSPRING's Cannabis Farms, including by voting and advocating for and against votes at County Board of Supervisor hearings.

COUNT TWO

[26 U.S.C. § 7206(1)]

On or about October 15, 2019, in San Luis Obispo County, within the Central District of California, and elsewhere, defendant HELIOS RAPHAEL DAYSPRING, also known as "Bobby Dayspring", a resident of San Luis Obispo, California, willfully made and subscribed to a materially false U.S. Individual Income Tax Return, Form 1040, for the calendar year 2018, which defendant DAYSPRING verified by a written declaration that it was made under the penalty of perjury, which was filed with the Internal Revenue Service, and which defendant DAYSPRING did not believe to be true and correct as to every material matter, in that line 10 of the Form

///
///
///
///
///
///
///
///
///
///
///
///
///
///
///

1   1040 reported his taxable income as $1,262,894, when, in truth and in

2   fact, as defendant DAYSPRING then well knew and believed, his taxable

3   income was substantially in excess of $1,262,894.

4

5

6                                    TRACY L. WILKISON
                                     Acting United States Attorney
7

8

9                                    SCOTT M. GARRINGER
                                     Assistant United States Attorney
10                                   Chief, Criminal Division

11                                   MACK E. JENKINS
                                     Assistant United States Attorney
12                                   Chief, Public Corruption and Civil
                                     Rights Section
13

14                                   THOMAS F. RYBARCZYK
                                     Assistant United States Attorney
15                                   Public Corruption and Civil Rights
                                     Section
16

17                                   ARON KETCHEL
                                     Assistant United States Attorney
18                                   Public Corruption and Civil Rights
                                     Section
19

20

21

22

23

24

25

26

27

28