1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA - WESTERN DIVISION

3      HONORABLE ANDRÉ BIROTTE JR., U.S. DISTRICT JUDGE

4

5   UNITED STATES OF AMERICA,        )
                                     )
6                  PLAINTIFF,        )
                                     )
7            vs.                     ) No. CR 21-0343-AB
                                     )
8   HELIOS RAPHAEL DAYSPRING,        )
    AKA "BOBBY DAYSPRING,"           )
9                                    )
                   DEFENDANT.        )
10  _____)

11

12

13          REPORTER'S TRANSCRIPT OF PROCEEDINGS

14               FRIDAY, OCTOBER 22, 2021

15                    2:11 P.M.

16               LOS ANGELES, CALIFORNIA

17

18

19

20

21

22  _____

23          **CHIA MEI JUI, CSR 3287, CCRR, FCRR**
              FEDERAL OFFICIAL COURT REPORTER
24           350 WEST FIRST STREET, ROOM 4311
              LOS ANGELES, CALIFORNIA 90012
25                 cmjui.csr@gmail.com

```
 1   APPEARANCES OF COUNSEL:

 2   FOR THE PLAINTIFF:

 3           OFFICE OF THE UNITED STATES ATTORNEY
             BY: THOMAS F. RYBARCZYK
 4           ASSISTANT U.S. ATTORNEY
             312 NORTH SPRING STREET
 5           13TH FLOOR
             LOS ANGELES, CALIFORNIA 90012
 6           (213) 894-2434

 7
     FOR THE DEFENDANT:
 8
             HOCHMAN SALKIN TOSCHER & PEREZ, P.C.
 9           BY:  SANDRA R. BROWN-BODNER, ATTORNEY AT LAW
             9150 WILSHIRE BOULEVARD, SUITE 300
10           BEVERLY HILLS, CALIFORNIA 90212
             (310) 281-3200
11
             ERIC D. SHEVIN, ATTORNEY AT LAW
12           15260 VENTURA BOULEVARD, SUITE 1400
             SHERMAN OAKS, CALIFORNIA 91403
13           (818) 784-2700

14

15

16

17

18

19

20

21

22

23

24

25
```

```
 1            LOS ANGELES, CALIFORNIA; FRIDAY, OCTOBER 22, 2021

 2                          2:11 P.M.

 3                           - - -

 4            THE CLERK:  Calling CR 21-343, United States of

 5   America versus Helios Raphael Dayspring.

 6            Counsel, please state your appearances.

 7            MR. RYBARCZYK:  Good afternoon, Your Honor.

 8            Thomas Rybarczyk on behalf of the United States.

 9            THE COURT:  Good afternoon.

10            MS. BROWN-BODNER:  Good afternoon, Your Honor.

11            Sandra Brown-Bodner on behalf of the defendant,

12   Mr. Dayspring, who is present out of custody.  Along with me

13   is my co-counsel, Eric Shevin.

14            THE COURT:  Mr. Dayspring, I know I have something

15   here on the docket, but I just want to confirm with you are

16   you okay with us proceeding via videoconferencing for

17   purposes of this hearing?

18            THE DEFENDANT:  Yes, Your Honor.

19            THE COURT:  It's my understanding that

20   Mr. Dayspring is here to plead guilty to a two-count

21   Information pursuant to Plea Agreement that was filed on

22   July 28th, 2021.  That Plea Agreement will be made a part of

23   this proceeding and incorporated and made a part of this

24   proceeding.

25            MS. BROWN-BODNER:  Your Honor, if I may, we
```

1    actually are pleading guilty in regards to Amended Plea

2    Agreement that was filed on October 14th, Your Honor.

3              THE COURT:  I am sorry.  I see it right here.

4    It's been a long day.  My apologies.

5              So that Plea Agreement -- what date was that

6    filed?  I'm sorry.

7              MS. BROWN-BODNER:  It was filed on October 14th,

8    Your Honor.

9              THE COURT:  So that's the Plea Agreement that's at

10   issue, and he is going to plead guilty to a two-count

11   information pursuant to that Plea Agreement.  Correct?

12             MR. RYBARCZYK:  Yes, Your Honor.

13             MS. BROWN-BODNER:  Yes, Your Honor.

14             THE COURT:  Okay.  Great.  Thank you for catching

15   that.  Good to know you are paying attention.  All right.

16             Mr. Dayspring, just a couple things.  One, I am

17   looking off to my left because I have a video screen that is

18   closer to me so I can see your images.  So I don't want you

19   to think I am not paying attention.

20             And, secondly, as it relates to this, we are going

21   to be here for 30, 45 minutes because, before I can accept

22   your plea, I need to make sure that you understand all of

23   your rights, the nature of this proceeding, going to ask you

24   a number of questions, tell you a lot of information.

25             If at any point you don't understand what I am

1   saying or have a question about what I am saying, please let

2   me know or let your lawyers know.  We'll stop the

3   proceedings to try to address any questions or concerns that

4   you have.

5           Do you understand that, sir?

6           THE DEFENDANT:  Yes, sir.

7           THE COURT:  All right.  So at this time let's

8   place you under oath, if you could please raise your right

9   hand.

10          THE CLERK:  You do solemnly swear that you will

11  make true answers to such questions that the Court will ask

12  you regarding your change of plea, so help you God?

13          THE DEFENDANT:  I do.

14          THE COURT:  Sir, you have just been placed under

15  oath.  That means, if you answer any of my questions

16  falsely, those answers can be later used against you in

17  another prosecution for perjury or for making a false

18  statement.

19          Do you understand that, sir?

20          THE DEFENDANT:  Yes, Your Honor.

21          THE COURT:  And do you understand that you have

22  the right to remain silent and not answer any of my

23  questions?

24          THE DEFENDANT:  Yes, Your Honor.

25          THE COURT:  Do you give up that right to remain

```
 1   silent so that you could enter your plea of guilty today?

 2             THE DEFENDANT:  Yes, Your Honor.

 3             THE COURT:  Does counsel join?

 4             THE DEFENDANT:  Yes, Your Honor.

 5             MS. BROWN-BODNER:  Yes, Your Honor.

 6             THE COURT:  All right.  Now, sir, tell me what is

 7   your true and correct full name.

 8             THE DEFENDANT:  Helios Raphael Dayspring.

 9             THE COURT:  How old are you, sir?

10             THE DEFENDANT:  Thirty-five.

11             THE COURT:  And how many years of school have you

12   completed?

13             THE DEFENDANT:  Maybe 11.

14             THE COURT:  Okay.  Have you been treated recently

15   for any mental illness or addiction to narcotics of any

16   kind?

17             THE DEFENDANT:  I have not.

18             THE COURT:  Are you under the influence of any

19   drug, medication, or alcoholic beverage of any kind?

20             THE DEFENDANT:  I am not.

21             THE COURT:  Have you had any drugs, medication, or

22   alcohol within the last three days?

23             THE DEFENDANT:  I have not.

24             THE COURT:  Do you suffer from any mental

25   condition or disability that would prevent you from fully
```

1  understanding the charges against you or the consequences to

2  you of the plea?

3          THE DEFENDANT:  Do not.

4          THE COURT:  Is there any reason we should not go

5  forward today, Mr. Dayspring?

6          THE DEFENDANT:  No.

7          THE COURT:  Ms. Brown-Bodner, have you talked to

8  your client today about these proceedings?

9          MS. BROWN-BODNER:  Yes, Your Honor, I have.

10          THE COURT:  Do you have any reason to believe that

11  he should not go forward with this plea today?

12          MS. BROWN-BODNER:  I do not.

13          THE COURT:  Do you believe that he is in

14  possession of his faculties and is competent to proceed?

15          MS. BROWN-BODNER:  I do, Your Honor.

16          THE COURT:  Based on the statements of

17  Mr. Dayspring and his counsel and my own observations, I do

18  find that he is in full possession of his faculties and is

19  competent to proceed.

20          Now, Mr. Dayspring, you are pleading guilty to a

21  two-count Information that charges you with federal program

22  bribery, in violation of Title 18 United States Code

23  Section 666(a)(2) and subscribing to false income tax -- I'm

24  sorry.  And subscribing to a false income tax return, in

25  violation of Title 26 United States Code Section 7206

1   subpart 1.  Those are both felonies.

2              Do you understand that, sir?

3              THE DEFENDANT:  I do.

4              THE COURT:  You have the constitutional right to

5   be charged by an Indictment that's returned by a grand jury.

6              You can waive that right and consent to being

7   charged by an Information that's been filed in this case by

8   United States Attorney.

9              Unless you waive Indictment, you may not be

10  charged with a felony unless a grand jury finds that there

11  is probable cause to believe that a crime has been committed

12  and that you committed it.

13             If you do not waive Indictment, the government may

14  present the case to the grand jury and ask that the grand

15  jury indict you.

16             Just so you know, a grand jury is comprised of at

17  least 16 but not more than 23 persons.  At least 12 of those

18  grand jurors must find that there is probable cause to

19  believe that you committed a crime with -- with which you

20  have been charged.

21             Now, a grand jury may or may not indict you.  If

22  you waive Indictment by grand jury, the case will proceed

23  against you on the United States Attorney's Information as

24  though you had been indicted.

25             Have you discussed waiving your right to an

1   Indictment by a grand jury, with your lawyer?

2          THE DEFENDANT:  I have.

3          THE COURT:  Do you understand your right to an

4   Indictment by grand jury, sir?

5          THE DEFENDANT:  I do.

6          THE COURT:  Has anyone made any promises,

7   representations, or guarantees of any kind in order to get

8   you to waive your right to an Indictment, sir?

9          THE DEFENDANT:  They have not.

10          THE COURT:  Has anyone attempted to in any way to

11   threaten you, family member, or anyone close to you, or in

12   any way force you to waive your right to an Indictment?

13          THE DEFENDANT:  No.

14          THE COURT:  Do you want to waive or give up your

15   right to an Indictment by a grand jury?

16          THE DEFENDANT:  I do.

17          THE COURT:  Ms. Brown-Bodner, have you discussed

18   with your client his right to be charged by Indictment?

19          MS. BROWN-BODNER:  Yes, Your Honor, I have.

20          THE COURT:  And do you know of any reason why he

21   should not waive Indictment?

22          MS. BROWN-BODNER:  I do not, Your Honor.

23          THE COURT:  Are you satisfied that the waiver is

24   knowingly, voluntarily, and intelligently made?

25          MS. BROWN-BODNER:  I am, Your Honor.

```
 1              THE COURT:  And do you concur in the waiver?

 2              MS. BROWN-BODNER:  I do concur, Your Honor.

 3              THE COURT:  All right.  And let me just see.

 4         I believe we already had a filed waiver of

 5    Indictment.  Is it correct the waiver of Indictment is dated

 6    August 25th, 2021, at least as far as the filing?  I want to

 7    make sure I have the right document.

 8              MS. BROWN-BODNER:  That should be the right date,

 9    Your Honor.

10              MR. RYBARCZYK:  Yes, Your Honor.

11              THE COURT:  Great.  I'm just dotting my Is and

12    crossing my Ts.  The waiver of Indictment is still to the

13    same charge as it relates to the original Plea Agreement;

14    correct?

15              MS. BROWN-BODNER:  That is correct.

16              THE COURT:  I just want to make sure -- I am just

17    trying to make sure procedurally.  I don't believe we need

18    to have another waiver of Indictment based on the second

19    amended Plea Agreement because the charges are the same.

20              MS. BROWN-BODNER:  Correct, Your Honor --

21              MR. RYBARCZYK:  Correct, the Information --

22              MS. BROWN-BODNER:  -- the Information.

23              MR. RYBARCZYK:  Sorry, Your Honor, yes.  I was

24    speaking over Ms. Brown.

25              Yes, that's correct, Your Honor, the Information
```

```
 1    has not changed.  It's remained the same.

 2              THE COURT:  In the case of United States versus

 3    Helios Raphael Dayspring, the Court finds the defendant is

 4    fully competent and aware of the nature of his right to

 5    require the government to proceed by way of Indictment.

 6              The Court further finds that the waiver is freely,

 7    intelligently, and voluntarily made, and so the Court will,

 8    therefore, accept the waiver and order that it be docketed.

 9              Mr. Dayspring, have you received a copy of the

10    Information?  That's the written statement that lays out the

11    charges against you?

12              THE DEFENDANT:  Yes, I have.

13              THE COURT:  Now, you have the right to have me

14    read the Indictment from beginning to end here in open

15    court.  Would you like me to read it at this time?

16              THE DEFENDANT:  No, thank you.

17              THE COURT:  Now, you also have the following

18    constitutional rights that you will be giving up if you

19    plead guilty.

20              Obviously you have the right to plead not guilty

21    and to persist in that plea.  You have the right to a speedy

22    and public trial.  You have the right to a trial by jury.

23              At that trial you would be presumed innocent and

24    the government would have to prove your guilt beyond a

25    reasonable doubt by proving each and every element of the
```

1  charges you are pleading guilty to.  If both -- I'm sorry,

2  the charges that you have been charged with, I should say.

3          If both you and the government were to waive your

4  right to jury trial, you could have the matter tried by the

5  Court.  In other words, I will hear the evidence and decide

6  whether or not the government has met its burden in the

7  case.

8          You have the right to have the assistance of a

9  lawyer for your defense throughout these proceedings even if

10 you don't plead guilty today.  And if you couldn't afford a

11 lawyer, one will be appointed for you free of charge.

12         You would have the right to see and hear the

13 witnesses testify against you and have the right to have

14 them be questioned by your lawyer.  You have the right to

15 have witnesses subpoenaed to testify on your behalf.

16         You could testify on your own behalf.  However,

17 you also have what is known as the privilege against

18 self-incrimination.  That is, you have the absolute right

19 not to testify or incriminate yourself in any way.

20         And if you went to trial and decided not to

21 testify, that fact could not be used against you.  However,

22 by pleading guilty, you are going to be giving up that right

23 because you are going to be incriminating yourself.

24         Lastly, you have the right to appeal your

25 conviction and your sentence if you went to trial and were

```
 1   convicted.
 2              Has your lawyer talked to you about all of these
 3   rights, sir?
 4              THE DEFENDANT:  Yes.
 5              THE COURT:  And do you understand all of those
 6   rights, sir?
 7              THE DEFENDANT:  Yes, I to.
 8              THE COURT:  Do you need any more time to talk to
 9   your lawyers about any of those rights?
10              THE DEFENDANT:  I do not.
11              THE COURT:  So, sir, you understand that, if I
12   accept your plea today, you are going to be incriminating
13   yourself and you will have waived or given up your right to
14   trial and all the other rights that I just described.  Do
15   you understand that, sir?
16              THE DEFENDANT:  Yes, I to.
17              THE COURT:  Do you give up those rights?
18              THE DEFENDANT:  I do.
19              THE COURT:  Ms. Brown-Bodner, do you -- are you
20   satisfied that each of the waivers are knowingly,
21   voluntarily, and intelligently made?
22              MS. BROWN-BODNER:  I am, Your Honor.
23              THE COURT:  Do you join and concur in each of the
24   waivers?
25              MS. BROWN-BODNER:  I join, Your Honor.
```

```
 1              THE COURT:  Now, as I mentioned earlier, you are
 2   pleading guilty to federal program bribery and subscribing
 3   to a false income tax return, in violation of
 4   Title 18 United States Code Section 666(a)(2) and 26 United
 5   States Code Section 7206 subpart 1.  Both of those charges
 6   are felonies.
 7              I am going to ask you at this time to listen
 8   carefully because the prosecutor is going to outline the
 9   elements for each offense as well as the maximum penalties
10   for each offense.
11              Mr. Rybarczyk.
12              MR. RYBARCZYK:  Thank you, Your Honor.
13              For defendant to be found guilty of Count 1, that
14   is, federal program bribery, in violation of Title 18 United
15   States Code Section 666(a)(2), the following must be true:
16              First, defendant corruptly gave, offered, or
17   agreed to give something of value to a person; second,
18   defendant intended to influence or reward an agent of a
19   local government, here the County of San Luis Obispo, in
20   connection with any business, transaction, or series of
21   transactions of that local government involving anything of
22   value of $5,000 or more; and third, the County of San Luis
23   Obispo received in any one-year period benefits in excess of
24   $10,000 under a federal program involving a grant, contract,
25   subsidy, loan, guarantee, insurance, or other form of
```

1    federal assistance.

2              For the defendant to be guilty of Count 2, that

3    is, subscribing to a false income tax return, in violation

4    of Title 26 United States Code Section 7206 subpart 1, the

5    following must be true:

6              First, defendant signed and caused to be filed a

7    tax return that he knew contained false or incorrect

8    information as to a material matter; second, return

9    contained a written declaration that it was being signed

10   subject to the penalties of perjury; and, third, in causing

11   the filing of the false tax return, defendant acted

12   willfully.

13             A matter is material if it had a natural tendency

14   to influence or was capable of influencing the decisions or

15   activities of the IRS.

16             A defendant acts willfully when defendant knows

17   that federal tax law imposed a duty on defendant and

18   defendant intentionally and voluntarily violated that duty.

19             THE COURT:  Did you go over the penalties?

20             MR. RYBARCZYK:  Sorry, Your Honor.  I apologize.

21             The statutory maximum sentence that the Court can

22   impose for a violation of 18 USC Section 666(a)(2) is 10

23   years imprisonment, a 3-year period of supervised release, a

24   fine of $250,000 or twice the gross gain or gross loss

25   resulting from the offense, whichever is greater, and a

1   mandatory special assessment of $100.

2        The statutory maximum sentence that the Court can

3   impose for a violation of Title 26 United States Code

4   Section 7206, subpart 1, is 3 years imprisonment, a 1-year

5   period of supervised release, a fine of $250,000 or twice

6   the gross gain or gross loss resulting from the offense,

7   whichever is greatest, and a mandatory special assessment of

8   $100.

9        The total maximum sentence for both of the

10  offenses to which defendant is pleading guilty is 13 years

11  imprisonment a three-year period of supervised release, a

12  fine of $500,000 or twice the gross gain or gross loss

13  resulting from the offenses, whichever is greatest, and a

14  mandatory special assessment of $200.

15       Would the Court like the government to advise the

16  defendant and the Court about the restitution?

17       THE COURT:  I was going to get to that point, but

18  go ahead.

19       MR. RYBARCZYK:  Your Honor, defendant understands

20  and agrees that, pursuant to 18 USC Section 3663(a)(3), the

21  Court may order defendant to pay restitution in the amount

22  of $3,438,795, which is the agreed total tax loss based upon

23  the count of conviction and relevant conduct; and, B, must

24  order the defendant to pay the cost of prosecution, if any,

25  which may be in addition to the statutory maximum fine

1  stated above.

2         Defendant agrees that restitution is due and

3  payable immediately after the judgment is entered and is

4  subject to immediate enforcement in full by the

5  United States.

6         If the Court imposes a schedule of payments,

7  defendant agrees that the schedule of payments is a schedule

8  of a minimum payment due and that the payment schedule does

9  not prohibit or limit the methods by which the United States

10  may immediately enforce the judgment in full.

11         The IRS will use the amount of restitution ordered

12  as the basis for civil assessment under 26 USC

13  Section 6201(a)(4).

14         The defendant does not have the right to challenge

15  the amount of this restitution based assessment.  See 26 USC

16  Section 6201(a)(4)(c).  Neither the existence of a

17  restitution payment schedule nor defendant's timely payment

18  of restitution according to the schedule will preclude the

19  IRS from immediately collecting the full amount of the

20  restitution based assessment.

21         THE COURT:  Thank you, Mr. Rybarczyk.

22         Mr. Dayspring, did you understand everything the

23  prosecutor just said about restitution?  The thumbnail

24  sketch is that I may order restitution in the amount of

25  almost $3.5 million.  Do you understand that, sir?

```
 1                  THE DEFENDANT:  Yes, I do.

 2                  THE COURT:  Now, sir, you may be subject to what

 3     is known as supervised release for a number of years if you

 4     are sent to prison in this case.

 5                  Have you discussed with your lawyers and do you

 6     understand the concept of supervised release?

 7                  THE DEFENDANT:  I do.

 8                  THE COURT:  If you are sent to prison and then

 9     placed on supervised release following your imprisonment, if

10     you violate one or more of the terms and conditions of your

11     supervised release, you may be returned to prison for all or

12     part of the term of supervised release.

13                  Do you understand that, sir?

14                  THE DEFENDANT:  Yes, I do.

15                  THE COURT:  If that were to happen, it could

16     result in you serving a total term of imprisonment that is

17     greater than the statutory maximum.

18                  Do you understand that, sir?

19                  THE DEFENDANT:  Yes.

20                  THE COURT:  If you are presently on parole or

21     probation or supervised release, this plea alone may be the

22     basis for the revocation of that parole, probation, or

23     supervised release; and, as a result, you could be returned

24     to prison on that other case.

25                  Do you understand that, sir?
```

```
 1              THE DEFENDANT:  Yes.
 2              THE COURT:  Now, if you are not a citizen of the
 3    United States, this plea and conviction may cause you to be
 4    deported or removed from the United States and may result in
 5    the denial of naturalization, citizenship, amnesty,
 6    residency status, and admission to the United States in the
 7    future.
 8              Do you understand that, sir?
 9              THE DEFENDANT:  Yes, I do.
10              THE COURT:  As I mentioned earlier, you are
11    pleading to two felony offenses.  If I accept your plea, you
12    will be found guilty of a felony which may deprive you of
13    certain valuable civil rights, such as the right to vote,
14    the right to hold public office, the right to serve on a
15    jury, and the right to possess a firearm of any kind.
16              Do you understand that?
17              THE DEFENDANT:  Yes, I do.
18              THE COURT:  I don't recall seeing this.  I just
19    want to confirm, Mr. Rybarczyk.  No forfeiture in this case;
20    correct?
21              MR. RYBARCZYK:  Not in the Plea Agreement, no,
22    Your Honor.
23              THE COURT:  All right.
24              Sir, have you understood everything that we have
25    talked about thus far, Mr. Dayspring?
```

```
 1                THE DEFENDANT:  Yes, I have.

 2                THE COURT:  Now, Mr. Dayspring, you are going to

 3   be sentenced under what is known as the Sentencing Reform

 4   Act of 1984.  The United States Sentencing Commission --

 5   they are an organization out of Washington, D.C. -- issued

 6   guidelines that judges must consult and take into account

 7   but are not required to follow in determining the sentence

 8   in a criminal case.

 9                In determining your sentence, I have to look at

10   the guideline range and to consider any aggravating or

11   mitigating circumstances under the guidelines and other

12   sentencing factors under Title 18 United States Code

13   Section 3553(a).

14                Have you and your lawyers talked about how the

15   sentencing guidelines might be applied in this case?

16                THE DEFENDANT:  Yes, sir, we have.

17                THE COURT:  Now, do you understand that,

18   regardless of what the guideline range is, I could sentence

19   you to up to the maximum that is allowed by law.

20                Do you understand that, sir?

21                THE DEFENDANT:  Yes, I do.

22                THE COURT:  Have your lawyers explained to you how

23   the various elements and factors will be used to determine

24   your sentence?

25                THE DEFENDANT:  Yes, they have.
```

```
 1              THE COURT:  Do you understand that neither the
 2    Court nor your lawyer will be able to determine the exact
 3    guideline range for your case until after a presentence
 4    report has been prepared?
 5              Do you understand that, sir?
 6              THE DEFENDANT:  Yes.
 7              THE COURT:  Now, once that report has been
 8    prepared, you will have an opportunity to review it with
 9    your lawyers, and so will the government, and you will be
10    able to make any challenges or objections to the report as
11    it relates to the calculations and the contents contained
12    therein.
13              Now, do you understand that the sentence I impose,
14    it may be different than any estimate of a sentence that
15    your lawyer has given to you?
16              Do you understand that?
17              THE DEFENDANT:  Yes.
18              THE COURT:  And the sentence I impose, it could be
19    more severe than what the government and/or your lawyer
20    asked or less severe than what the government or your lawyer
21    asked.
22              Do you understand that, sir?
23              THE DEFENDANT:  Yes.
24              THE COURT:  And the fact that you are uncertain
25    about the sentence or the fact that you may be disappointed
```

1    about the sentence would not be a basis for you to, say,

2    "Wait a minute.  Stop.  Time out.  I want to start all over

3    again because I don't like the sentence."

4            Do you understand that?

5            THE DEFENDANT:  Yes.

6            THE COURT:  Okay.

7            MR. RYBARCZYK:  Your Honor, I am sorry to

8    interrupt.  When I -- after I advised the Court and

9    defendant of the elements and the potential penalties and

10   restitution, I don't know -- I apologize if I misheard.  I

11   don't know if I heard the Court ask if he understood the

12   elements or the other penalties he faced.

13           THE COURT:  I thought I said, "Did you understand

14   everything that the prosecutor just said?"  I thought he

15   said, "Yes," but I'll go back just to dot our Is and cross

16   our Ts.

17           Mr. Dayspring, earlier the prosecutor discussed

18   the elements of the offense as well as the penalties for the

19   offense.  Did you understand what the prosecutor said with

20   respect to both of those categories, the penalties and the

21   elements, for the offenses that you are pleading guilty to?

22           THE DEFENDANT:  Yeah.

23           THE COURT:  Okay.

24           MR. RYBARCZYK:  Thank you, Your Honor.

25           THE COURT:  It appears -- again, we're doing this

```
 1    virtually -- but it appears, based on what I have in front
 2    of me, that, Mr. Dayspring -- it looks like everyone signed
 3    the Plea Agreement on October 14th of this year.
 4              Is that correct, Mr. Rybarczyk?
 5              MR. RYBARCZYK:  Yes.
 6              THE COURT:  And Ms. Brown-Bodner?
 7              MS. BROWN-BODNER:  That's correct.
 8              THE COURT:  Let me ask you, Ms. Brown-Bodner, did
 9    Mr. Dayspring sign the Plea Agreement in your presence?  I
10    know with COVID everyone is doing things differently, if you
11    could let me know how you were able to effectuate the
12    signatures on the Plea Agreement.
13              MS. BROWN-BODNER:  He did not sign it in my
14    presence, Your Honor.  I e-mailed it to him.  He
15    acknowledged he received it.  He then signed it and told me
16    he signed it and e-mailed it back to me.
17              THE COURT:  Is that correct, Mr. Dayspring?
18              THE DEFENDANT:  Yes, sir.
19              THE COURT:  Okay.  Great.
20              Mr. Dayspring, did you go over the entire -- did
21    you go over the entire Plea Agreement with your lawyer
22    before you signed it?
23              THE DEFENDANT:  Yes, I did.
24              THE COURT:  And did you spend time with your
25    lawyers going over the contents of the Plea Agreement before
```

1    you signed it?

2            THE DEFENDANT:  Yes.

3            THE COURT:  Do you need any more time to discuss

4    the Plea Agreement with your lawyers?

5            THE DEFENDANT:  I do not.

6            THE COURT:  And do you understand, sir, that this

7    Plea Agreement is an agreement between you and the

8    government?  I'm not a party to this agreement.  Do you

9    understand that, sir?

10           THE DEFENDANT:  Yes.

11           THE COURT:  Has anyone made any promises,

12   representations, or guarantees of any kind in an effort to

13   get you to plead guilty other than what's contained in the

14   Plea Agreement?

15           THE DEFENDANT:  No.

16           THE COURT:  Other than what's contained in the

17   Plea Agreement and other than a general discussion of the

18   guidelines, has anyone made any promise of leniency or

19   promise of a specific sentence or sentence range if you

20   plead guilty in this case?

21           THE DEFENDANT:  No.

22           THE COURT:  Has anyone told you that the Court

23   would impose a specific sentence if you plead guilty in this

24   case?

25           THE DEFENDANT:  No.

1    THE COURT:  Has anyone attempted in any way to

2    threaten you, a family member, or anyone close to you in

3    order to get you to plead guilty in this case?

4         THE DEFENDANT:  No, Your Honor.

5         THE COURT:  Are you pleading guilty voluntarily

6    and of your own free will?

7         THE DEFENDANT:  Yes.

8         THE COURT:  Now, it's my understanding this Plea

9    Agreement has a limited waiver of appeal.  Is that correct,

10   Mr. Rybarczyk?

11        MR. RYBARCZYK:  Yes, Your Honor.

12        THE COURT:  Mr. Dayspring, I am going to ask you

13   once again to listen carefully to what the prosecutor is

14   about to say with respect to your appellate waivers, and I

15   am going to ask you some questions about it afterwards.

16        Mr. Rybarczyk.

17        MR. RYBARCZYK:  Thank you, Your Honor.

18        Defendant agrees that, provided the Court imposes

19   a term of imprisonment within or below the range

20   corresponding to an offense Level of 20 and a criminal

21   history category calculated by the Court, defendant gives up

22   the right to appeal all of the following:  A, the procedures

23   and calculations used to determine and impose any portion of

24   the sentence; B, the term of imprisonment imposed by the

25   Court; C, the fine imposed by the Court provided it is

1   within the statutory maximum; D, to the extent permitted by

2   law, the constitutionality or legality of defendant's

3   sentence provided it is within the statutory maximum; E, the

4   amount and terms of any restitution order provided it

5   requires payment of no more than $3,438,793; F, the term of

6   probation or supervised release imposed by the Court,

7   provided it is within the statutory maximum; and, G, any of

8   the following conditions of probation or supervised release

9   imposed by the Court, the conditions set forth in amended

10  General Order 20-04 of this Court, the drug testing

11  conditions mandated by 18 USC Sections 3563(a)(5) and

12  3583(d) and the alcohol and drug use conditions authorized

13  by 18 USC Section 3563(b)(7).

14          Would the Court -- Your Honor, would the Court

15  also like the government to inform or to read out the

16  government's waiver?

17          THE COURT:  I don't think that's necessary, but

18  thank you.

19          MR. RYBARCZYK:  Thank you.

20          THE COURT:  Mr. Dayspring, did you understand

21  everything that the prosecutor just said about your

22  appellate rights waiver?

23          THE DEFENDANT:  Yes.

24          THE COURT:  Did you discuss giving up those rights

25  with your lawyer?

```
 1              THE DEFENDANT:  Yes.

 2              THE COURT:  I will accept the Plea Agreement based

 3   on that understanding.

 4              I think I have covered this before -- the Plea

 5   Agreement was signed on October 14th.

 6              And let me ask, Ms. Brown-Bodner, does the Plea

 7   Agreement represent the entire agreement between your client

 8   and the government?

 9              MS. BROWN-BODNER:  It does, Your Honor.

10              THE COURT:  Did you review the facts of the case

11   and all the discovery provided by the government, with your

12   client?

13              MS. BROWN-BODNER:  Yes, Your Honor, we have.

14              THE COURT:  And did you pursue with your client

15   potential defenses that he might have?

16              MS. BROWN-BODNER:  Yes, Your Honor.

17              THE COURT:  Have you advised him concerning the

18   legality or admissibility of any statements or confessions

19   or other evidence that the government has against him?

20              MS. BROWN-BODNER:  Yes.

21              THE COURT:  To the best of your knowledge, is your

22   client pleading guilty because of any illegally obtained

23   evidence in the possession of the government?

24              MS. BROWN-BODNER:  No, Your Honor.

25              THE COURT:  Did you and Mr. Dayspring agree it was
```

1  in his best interests to enter into this Plea Agreement?

2          MS. BROWN-BODNER:  Yes, Your Honor.

3          THE COURT:  Is it your opinion that Mr. Dayspring

4  is entering into this agreement Plea Agreement freely and

5  voluntarily with full knowledge of the charges and the

6  consequences to him of the plea?

7          MS. BROWN-BODNER:  Yes, Your Honor.

8          THE COURT:  Have there been any promises,

9  representations, or guarantees made either to you or your

10  client other than what's stated in the Plea Agreement?

11          MS. BROWN-BODNER:  No.

12          THE COURT:  And other than what's in the Plea

13  Agreement and other than a general discussion of the

14  guidelines and other sentencing considerations, have you

15  given Mr. Dayspring any indication of a specific sentence or

16  specific sentence range that this Court would impose if he

17  pled guilty?

18          MS. BROWN-BODNER:  No, Your Honor.

19          THE COURT:  And do you know of any reason why the

20  Court should not accept Mr. Dayspring's plea?

21          MS. BROWN-BODNER:  I do not, Your Honor.

22          THE COURT:  Do you join in the waiver of jury

23  trial and concur in the plea?

24          MS. BROWN-BODNER:  I do, Your Honor.

25          THE COURT:  Mr. Rybarczyk, other than what is

1  expressly contained in the Plea Agreement has the government

2  made any promises, representations, or guarantees either to

3  Mr. Dayspring or his counsel?

4          MR. RYBARCZYK:  No.

5          THE COURT:  Does the government waive jury trial?

6          MR. RYBARCZYK:  Yes, Your Honor.

7          THE COURT:  Mr. Dayspring, back to you.

8          Are you satisfied with the representations that --

9  with the representation that your lawyers have provided?

10         THE DEFENDANT:  Yes, Your Honor.

11         THE COURT:  Have you told them everything that you

12  know about your case?

13         THE DEFENDANT:  Yes.

14         THE COURT:  Have you told -- I'm sorry.  Do you

15  believe your lawyers have fully considered any defense that

16  you might have to the case?

17         THE DEFENDANT:  Yes.

18         THE COURT:  Do you believe your lawyers have fully

19  advised you concerning the case?

20         THE DEFENDANT:  I do.

21         THE COURT:  Have you had enough time to talk with

22  them about the case?

23         THE DEFENDANT:  Yes, I have.

24         THE COURT:  Do you understand the consequences to

25  you of making this plea?

```
1              THE DEFENDANT:  Yes, I do.

2              THE COURT:  Sir, if I accept your plea, all that

3   will be left in this case is your sentencing, which may

4   include prison time.

5              Do you understand that?

6              THE DEFENDANT:  Yes, I do.

7              THE COURT:  Having in mind all that we've

8   discussed regarding your plea, the rights that you will be

9   giving up, the maximum sentence that you may receive, do you

10  still want to plead guilty, sir?

11             THE DEFENDANT:  Yes.

12             THE COURT:  At this time, I am going to ask you

13  once again to listen carefully because the government is

14  going to state the facts that it believes it will be able to

15  prove if this case were to go to trial, and then I am going

16  to ask you some questions about them.

17             Mr. Rybarczyk, please proceed.

18             MR. RYBARCZYK:  Thank you, Your Honor.

19             If this case were to proceed to trial, the

20  government would prove the following facts beyond a

21  reasonable doubt:

22             At all times relevant to the charges in the

23  Information, defendant owned, operated, and/or controlled

24  businesses specializing in cannabis cultivation and

25  distribution in the Central District of California including
```

1  the County of San Luis Obispo, herein referred to as the

2  county.

3          Defendant owned, operated, and had a controlling

4  interest and/or a financial stake in multiple farms that

5  grew and cultivated cannabis in the county, which will be

6  collectively referred to here as cannabis farms.

7          Defendant also owned or had a controlling interest

8  or financial stake in business that sold cannabis

9  commercially to the public, including a dispensary in

10 Grover Beach, California, herein referred to as the

11 Grover Beach Dispensary.

12         All of defendant's farms that cultivated cannabis

13 required County approvals to operate and the Grover Beach

14 Dispensary required approvals from the City of Grover Beach,

15 herein referred to as the City, to operate.

16         County Supervisor 1 bribery scheme:

17         County Supervisor 1 was a county supervisor, an

18 elected position within the County.  The County's board of

19 supervisors was comprised of five supervisors.  As the

20 County Supervisor, County Supervisor 1 voted on matters

21 appearing before the County Board of Supervisors, including

22 matters that affected defendant's cannabis farms, and had

23 influence over matters occurring within the County and its

24 departments.

25         The County was a local government that received

1   every calendar year between 2016 and 2020 benefits in excess

2   of $10,000 under a Federal program involving a grant,

3   contract, subsidy, loan, guarantee, insurance, or other form

4   of Federal assistance.

5           Beginning in or about the fall of 2016 and

6   continuing until on or about November 2019, defendant paid

7   County Supervisor 1 approximately $29,000 in unreported cash

8   payments.  Defendant provided County Supervisor 1 the cash

9   payments himself in person and with no one else present.

10  During the same period, defendant also provided County

11  Supervisor 1 cannabis products on multiple occasions free of

12  charge and paid for multiple meals for County Supervisor 1.

13          The defendant provided County Supervisor this

14  stream of benefits with the understanding that as

15  opportunities arose County Supervisor 1 would do, amongst

16  other things, the following:  Vote on cannabis legislation

17  benefiting his cannabis farms, advocacy of other public

18  officials in support of cannabis legislation benefiting his

19  cannabis farms and disclose nonpublic County information

20  concerning cannabis related issues, all of which benefited

21  defendant and defendant's businesses.

22          Official acts regarding extending abeyances on

23  defendant's cannabis farms:

24          One of the matters for which defendant sought

25  official action from County Supervisor 1 involved the

extension of an abeyance on enforcement action on
defendant's cannabis farms as the County considered
defendant's applications for permits to cultivate cannabis
on the cannabis farms.  In other words, defendant sought to
ensure his cannabis farms could continue to operate
notwithstanding a County law prohibiting cannabis
cultivation farms from operating without the appropriate
County and State approvals.

If the abeyances on enforcement action were to
have lapsed, the County may have required the cannabis farms
defendant purchased, controlled, and/or took an interest to
shut down, resulting in significant financial losses to
defendant well in excess of $5,000.

Regulatory background on County cannabis
cultivation law:

On September 20th, 2016, the County established a
moratorium on cultivation of cannabis in the County's
unincorporated areas, herein referred to as the
September 2016 ordinance.  The September 2016 ordinance,
however, also provided a temporary exemption from
enforcement for cannabis cultivators who had existing farms
and registered with the County pursuant to the ordinance.
Accordingly, cannabis cultivators who qualified for the
exemption under the September 2016 ordinance could operate
lawfully as there was a temporary abeyance on enforcement.

1   Those cultivators that did not qualify for an exemption

2   risked being shut down by the County.  This temporary

3   abeyance on enforcement action expired on September 19,

4   2018.

5           Defendant begins paying County Supervisor 1 and

6   receives his vote for a continued abeyance on enforcement

7   action.

8           Starting some time in fall 2016, defendant began

9   paying County Supervisor 1 cash starting first with $1,000.

10  Prior to doing so at an event in October 2016, defendant

11  provided County Supervisor 1 three $1,000 money orders made

12  out in his name and the name of two associates.  Those money

13  orders were subsequently deposited into the County

14  Supervisor 1's personal account.  Later in October 2016

15  following County Supervisor 1's solicitation, defendant

16  provided County Supervisor 1 $3,000 in cash.  Over the next

17  year defendant provided County Supervisor 1 another cash

18  payment of $5,000.

19          On November 27th, 2017, the County's Board of

20  Supervisors voted five to zero to establish a limited

21  abeyance of enforcement policy for those cannabis

22  cultivators who had registered with the County in the

23  County's Inland Zone pursuant to the September 2016

24  ordinance.  This abeyance on enforcement action expired on

25  December 31st, 2018.  County supervisor 1 voted in favor of

1   the abeyance.

2           Defendant continued paying County Supervisor 1

3   cash and asked him to vote on continued abeyances of

4   enforcement action in 2018 and 2019.

5           Sometime in early 2018, defendant provided County

6   Supervisor 1 approximately $5,000 in cash as well as

7   cannabis-related products.

8           On December 10th, 2018, defendant and County

9   Supervisor 1 discussed the importance of having County

10  Supervisor 1 and other County supervisors approve the

11  continued abeyance on enforcement action and how a lapse in

12  the abeyance would affect his cannabis farms.  Specifically,

13  defendant told County Supervisor 1 in a text message that,

14  quote, "It's really important you guys extend the time frame

15  for submission and don't allow other people in yet," end

16  quote, referring to the County's impending vote on

17  December 11th, 2018, to extend the abeyances on enforcement

18  action against cannabis cultivators.

19          Defendant further told County Supervisor 1 via

20  text message that, quote, "This affects all the properties

21  that I just got investment into, every one of them.  If I am

22  not deemed complete and get accepted, conditional use

23  permits, I don't get my ownership in the land," end quote.

24          County Supervisor 1 responded, Got it -- quote,

25  "Got it.  We'll see what we can do.  Extension of time frame

1   seems reasonable and probably no one else in until everyone

2   has been deemed complete," end quote.  Defendant responded

3   that County Supervisor 1 was the, quote, "Man," end quote.

4           On December 11, 2018, the County's Board of

5   Supervisors voted five to zero to approve an extension of

6   the abeyances with County Supervisor 1 seconding the motion

7   and voting in favor of the resolution.

8           On December 12th, 2018, County Supervisor 1 told

9   defendant via text message, quote, "We extended abeyance

10  yesterday" to which -- end quote -- to which defendant

11  replied, quote, "Thank God," end quote.  In early 2019

12  defendant provided County Supervisor 1 approximately $5,000

13  in cash outside a restaurant in Avila Beach, California.

14          On November 15th, 2019, defendant and County

15  Supervisor 1 arranged to meet at a Pismo Beach restaurant

16  for dinner for which defendant paid.  After dinner,

17  defendant gave County Supervisor 1 $5,000 in cash.

18          At the December 10th, 2019, County Board of

19  Supervisors' meeting, defendant, business associates of

20  defendant, and other cannabis cultivators spoke during the

21  public comment period in support of extending the cannabis

22  abeyance extension.  After these comments, County

23  Supervisor 1, in his official capacity, advocated for and

24  advised the Board of Supervisors to pass the cannabis

25  abeyance extension and moved to place it on the agenda for

the following week's Board of Supervisors meeting.  The
agenda motion failed.

On the December 17th, 2019, County Board of
Supervisors meeting, defendant, business associates of
defendant, and other cannabis cultivators spoke during the
public comment period in support of extending the cannabis
abeyance extension.  After these comments, County
Supervisor 1 in his official capacity moved, to place on the
agenda the cannabis abeyance extension for the January 14th,
2020, Board of Supervisors meeting.  County Supervisor 1
voted in favor, and the motion passed three to two.

On January 14th, 2020, County Supervisor 1 voted
in favor of the County approving the cannabis abeyance
extension which passed by a three to two vote.

County Supervisor 1's efforts to preserve
defendant's cannabis farms.

At the March 26, 2019, County Board of Supervisors
meeting, the Board of Supervisors took 16 straw votes
relating to cannabis regulation.  Amongst the straw votes
taken during the meeting was a vote to ban all outdoor
cannabis cultivation, which, if enacted, would have caused
significant financial loss to defendant and the cannabis
farms, many of which grew cannabis outdoors.  Throughout the
meeting, County Supervisor 1 sent text messages to defendant
and Employee 1, an employee of defendant's companies,

1    updating them as the votes were taken.  In particular,

2    County Supervisor 1 explained how he had to work to prevent

3    another County supervisor from pushing the law banning all

4    outdoor cannabis cultivation.

5          At one point, County Supervisor 1 wrote that "he,"

6    quote, "had to keep these fuckers, other County Supervisors,

7    from going way beyond, and it is exhausting.  Where is the

8    industry financial support for my reelection, question mark,

9    question mark," end quote, to which the defendant responded

10   in writing, quote, "We are the industry and," end quote and,

11   quote, "We're all you need.  LOL," end quote.

12         On March 29th, 2019, County Supervisor 1 sent

13   defendant and Employee 1 a text message asking, "Tomorrow is

14   your favorite County Supervisor's birthday.  What are you

15   two cannabis kings going to do for him, question mark,

16   question mark, question mark," end quote.

17         After Employee 1 asked if they could take County

18   Supervisor 1 to dinner or lunch, defendant said they would

19   take County Supervisor 1 to dinner and asked County

20   Supervisor 1 to pick the location and time.  On March 30th,

21   2019, defendant and Employee 1 had dinner with County

22   Supervisor 1 at a restaurant in Pismo Beach, California.

23   After dinner, which defendant paid for, defendant met with

24   County Supervisor 1 and gave County Supervisor 1 $5,000 in

25   cash.

1          On April 6, 2019, County Supervisor 1 told

2   defendant and Employee 1 that, quote, "Your industry should

3   give me one giant French kiss wrapped in money after my work

4   today," end quote.

5          In June 2019 defendant and Employee 1 held a

6   political fundraiser at County Supervisor 1's request at

7   defendant's home where over $13,000 was raised.

8          Attempted Mayor 1 bribery scheme.

9          Mayor 1 was the City's mayor, an elected position

10   within the City.  As the City's mayor, Mayor 1, voted on

11   matters appearing before the City Council, including matters

12   that affected the Grover Beach Dispensary.  Mayor 1 was also

13   one of the two City council members on the City's

14   subcommittee charged with overseeing the expansion of

15   medical and commercial cannabis.  The City was a local

16   government that received, every calendar year between 2016

17   and 2018, benefits in excess of $10,000 under a Federal

18   program involving a grant, contract, subsidy, loan,

19   guarantee, insurance, or other form of federal assistance.

20          In 2017, the City began accepting applications

21   from companies seeking to dispense medical cannabis.  In

22   2018, the City allowed those companies that obtained

23   dispensary permits to sell cannabis commercially.  Defendant

24   sought permits for two dispensaries, including the

25   Grover Beach Dispensary.  The City dispensary was worth

substantially more than $5,000, in light of the anticipated

income generated from the cannabis dispensary in the City.

On September 2017 defendant, Mayor 1, and Business

Partner 1, one of defendant's business partners, met at a

restaurant in Arroyo Grande, California.  At the time,

defendant and Business Partner 1 had already submitted their

applications for two permits in the City, including for the

Grover Beach Dispensary.  On their way to the meeting,

Business Partner 1 told defendant that Mayor 1 had been

pushing Business Partner 1 for a bribe in exchange for their

cannabis permits.  Business Partner 1 told defendant that

this meeting was their chance to bribe Mayor 1.

During the meal, Mayor 1 left the table to use the

restroom.  While Mayor 1 was away from the table, Business

Partner 1 told defendant this was their chance to offer

Mayor 1 a bribe.  When Mayor 1 returned to the table,

defendant had entered the Number 100,000 on the calculator

app on his cellular phone, showed it to Mayor 1, and said it

was for, quote, "Two," end quote.  Defendant wanted to

convey to Mayor 1 that defendant and Business Partner 1 were

prepared to pay $100,000 to Mayor 1 if Mayor 1 used Mayor

1's official position to secure cannabis dispensary permits

for defendant and Business Partner 1.  Mayor 1 did not

respond to the offer at dinner.

The City later awarded a single dispensary permit

1    to the Grover Beach Dispensary.  After the City awarded the

2    permit for the Grover Beach Dispensary, defendant asked

3    Business Partner 1 if they owed Mayor 1 $50,000 because they

4    received one of the two requested permits.  Business

5    Partner 1 told defendant that they did not owe any money to

6    Mayor 1 because their proposed deal required that defendant

7    and Business Partner 1 receive two permits.

8                 Defendant falsely subscribed tax returns.

9                 On or about October 15, 2019, In San Luis Obispo

10   County, within the Central District of California, defendant

11   caused his U.S. individual tax return Form 1040 for 2018 to

12   be filed electronically with the IRS.  Prior to doing so,

13   defendant had authorized his tax preparer to file his return

14   electronically for him with the IRS.  Defendant willfully

15   signed and subscribed to this income tax return, which

16   contained a written declaration that it was being signed

17   under penalty of perjury and which defendant knew contained

18   materially false information, namely, on line 10 defendant

19   falsely reported his taxable income was $1,262,894 when, in

20   fact, the defendant then knew his actual taxable income in

21   2018 was substantially greater.  In fact, defendant's actual

22   income in 2018 was more than $6.5 million, resulting in a

23   tax loss to the IRS of approximately $2,048,950.

24                 Defendant understood that the false and fraudulent

25   income for 2018 was material in that it affected the IRS's

1   calculation of the amount of income tax owed.  Defendant

2   acted willfully in that defendant knew that the law required

3   him to report all income accurately and to pay all income

4   tax that was due and owing.  Defendant voluntarily and

5   intentionally violated that duty.

6           On defendant's U.S. individual income tax returns

7   for 2014, 2015, 2016, and 2017, defendant substantially

8   underreported his income causing an additional tax loss to

9   the IRS of approximately $1,389,843.  As a result of

10  defendant's underreporting of his income in 2014 through

11  2018, defendant caused the IRS approximately $3,438,793 in

12  lost tax revenue.

13          THE COURT:  Thank you, Mr. Rybarczyk.

14          Mr. Dayspring, I know there was a lot of

15  information there, but did you understand everything that

16  the prosecutor just said about you?

17          THE DEFENDANT:  Yes.

18          THE COURT:  Is everything that he said about you,

19  your conduct, and your intent, is that all true and correct?

20          THE DEFENDANT:  Yes.

21          THE COURT:  Are you pleading guilty because you

22  did the things charged in the two-count Information that has

23  been filed with the Court?

24          THE DEFENDANT:  Yes.

25          THE COURT:  Are you pleading guilty, sir, because

```
 1    you are, in fact, guilty?

 2              THE DEFENDANT:  Yes.

 3              THE COURT:  Is the government satisfied with the

 4    factual basis, Mr. Rybarczyk?

 5              MR. RYBARCZYK:  Yes, Your Honor.

 6              THE COURT:  Do counsel agree that the Court's

 7    complied with the requirements of Rule 11?

 8              Mr. Rybarczyk.

 9              MR. RYBARCZYK:  Yes, Your Honor.

10              THE COURT:  Ms. Brown-Bodner.

11              MS. BROWN-BODNER:  Yes, Your Honor.

12              THE COURT:  All right.  So, Mr. Dayspring, in case

13    CR 21-343, how do you plead to the two-count Information in

14    this case?

15              THE DEFENDANT:  Guilty.

16              THE COURT:  All right.

17              Now, Mr. Dayspring, I am going to make certain

18    findings, and so if you don't understand what I'm saying or

19    if you have any questions about what I'm saying, please let

20    me know.

21              In the case of United States versus Helios Raphael

22    Dayspring, the Court having questioned Mr. Dayspring and his

23    lawyer on the offer to plead guilty to the two-count

24    Information that has been filed in this court, Mr. Dayspring

25    and his counsel have advised the Court that they have
```

1   conferred concerning the offered pleas of guilty and all

2   aspects of the charges against Mr. Dayspring and any

3   defenses that he may have and the Court having observed

4   Mr. Dayspring's intelligence, demeanor, and attitude while

5   answering the questions and the Court having observed that

6   Mr. Dayspring does not appear to be under the influence of

7   any drug, medication, or alcohol, or any other substance or

8   factor that might affect his actions or judgment in any

9   manner; so the Court finds that he is fully competent and

10   capable of entering an informed plea, he is aware of the

11   nature of the charges and the consequences to him of the

12   plea, and I find that the plea is knowingly, voluntarily,

13   and intelligently made with a full understanding of the

14   nature of the charges, the consequences to him of the plea,

15   and his constitutional rights.

16          The Court further finds that the plea is supported

17   by an independent factual basis containing each of the

18   essential elements of the offenses.  So the Court will

19   accept the plea and order that the plea be entered.

20          Mr. Dayspring, as I mentioned earlier, a written

21   presentence report is going to be prepared in this case.

22   You are going to be asked for information for that report.

23   Your lawyer may be present with you if you wish during that

24   interview.  Both -- all of you will be able to read the

25   report, file any objections that you have to the report, and

1    at the time of the sentencing you will be able to speak with

2    me directly before I sentence you.

3            So I am going to refer the matter over to the

4    probation office for a presentence report.  The proposed

5    date for sentencing in this case is February 11th, 2022, at

6    1:30 P.M.

7            Does that date and time work for the parties?

8            Ms. Brown-Bodner.

9            I can't hear you for some reason.

10           Ms. Brown-Bodner, if you can hear me -- I think

11   we're having a problem.  We may be having a problem on this

12   end because I can't hear anyone.  I just see movement.  Just

13   bear with me one moment.

14           If you can all hear me, can you just give me a

15   thumbs up first to see if the connection is working.

16       (Brief pause in the proceedings.)

17           THE COURT:  My apologies.  We are in a new world

18   now.

19           Let's go back on the record, if we could.  We had

20   a technical malfunction.  So I will state the findings

21   again.

22           And, Mr. Dayspring, if you don't understand what

23   I'm saying or have any questions, please let me know.

24           In the case of United States versus Helios Raphael

25   Dayspring, the Court having questioned Mr. Dayspring and his

1    counsel on his offer to plead guilty to the two-count

2    Information, which is a felony, Mr. Dayspring and his

3    counsel have advised the Court that they've conferred

4    concerning the offered pleas of guilty and all aspects of

5    the charges against Mr. Dayspring and any defenses that he

6    may have, and the Court having observed Mr. Dayspring's

7    intelligence, his demeanor, attitude while answering the

8    questions, and the Court having observed Mr. Dayspring does

9    not appear to be under the influence of any medicine, drug,

10   or other substance or factor that might affect his actions

11   or judgment in any manner; so I find he is fully competent

12   and capable of entering an informed plea, he is aware of the

13   nature of charges and the consequences to him of the plea.

14          The Court further finds that the plea is

15   knowingly, voluntarily, and intelligently made with a full

16   understanding of the nature of the charges, the consequences

17   to him of the plea, and his constitutional rights.

18          The Court further finds that the plea is supported

19   by an independent factual basis containing each of the

20   essential elements of the offenses.  So I will accept the

21   plea and order that the pleas be entered.

22          As I mentioned to you earlier, sir, a written

23   presentence report will be prepared by the probation office.

24   You are going to be asked to provide information for that

25   report.  Your lawyer may be present with you if you wish.

1          At the time of your sentencing, your lawyers will

2    make a presentation on your behalf, the government will make

3    a presentation on their behalf.  You will have an

4    opportunity to speak with me directly at the time of your

5    sentencing.

6          So I am going to refer the matter to the probation

7    office for a presentence report.  My proposed sentencing

8    date is February 11th, 2022, at 1:30 P.M.

9          Does that date and time work for counsel?

10          Ms. Brown-Bodner?

11          MS. BROWN-BODNER:  Yes, Your Honor.  Could you

12    repeat the time.  I apologize.

13          THE COURT:  1:30 P.M.

14          MS. BROWN-BODNER:  Thank you.

15          THE COURT:  Mr. Shevin, I assume will that work

16    for you?

17          MR. SHEVIN:  Yes, it does.  Thank you, Your Honor.

18          THE COURT:  Mr. Rybarczyk, I assume you or someone

19    from the government will be there.

20          MR. RYBARCZYK:  Yes, Your Honor.

21          THE COURT:  We are going to have the matter set

22    for that date and time.

23          Sir, you are ordered to appear back in court on

24    that date and time without any further notice or order of

25    the Court.

```
 1              I believe Mr. Dayspring is out on bond.  Unless

 2    there is an objection, he will remain on the current bond

 3    conditions.

 4              MR. RYBARCZYK:  No objection, Your Honor.

 5              THE COURT:  Anything further from the government?

 6              MR. RYBARCZYK:  No, Your Honor.

 7              THE COURT:  Anything further, Ms. Brown-Bodner?

 8              MS. BROWN-BODNER:  No.  Thank you.

 9              THE COURT:  All right.  So I think that concludes

10    this hearing.  Apologies for the technical difficulties.  We

11    will see you all February of next year for the sentencing.

12    Have a good day and the rest of your weekend.  Stay safe.

13              THE DEFENDANT:  Thank you.

14              MR. RYBARCZYK:  Thank you so much, Your Honor.

15         (Proceedings concluded at 3:24 p.m.)

16                           --oOo--

17

18

19

20

21

22

23

24

25
```

```
 1                        CERTIFICATE

 2

 3        I hereby certify that pursuant to Section 753,

 4   Title 28, United States Code, the foregoing is a true and

 5   correct transcript of the stenographically reported

 6   proceedings held in the above-entitled matter and that the

 7   transcript page format is in conformance with the

 8   regulations of the Judicial Conference of the United States.

 9

10   Date:  December 11, 2021.

11

12

13

14                    __/S/ CHIA MEI JUI _____

15                    Chia Mei Jui, CSR No. 3287

16

17

18

19

20

21

22

23

24

25
```