TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
1500 United States Courthouse
312 North Spring Street
Los Angeles, California 90012
Telephone: (213) 894-8452
Facsimile: (213) 894-0141
E-mail: thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>HELIOS RAPHAEL DAYSPRING,<br>aka "Bobby Dayspring,"<br><br>Defendant. | No. CR 21-343-AB<br><br><u>GOVERNMENT'S SENTENCING POSITION FOR DEFENDANT HELIOS RAPHAEL DAYSPRING</u><br><br>Hearing Date: May 27, 2022<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom of the Hon. André Birotte Jr. |

Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Thomas F. Rybarczyk, hereby files its sentencing position with respect to defendant HELIOS RAPHAEL DAYSPRING.

The government's sentencing position is based upon the attached memorandum of points and authorities, its separately-filed, under-seal motion pursuant to U.S.S.G. § 5K1.1, the Presentence

Investigation Report, the files and records in this case, and such further evidence and argument as the Court may permit.

Dated: May 13, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/ Thomas F. Rybarczyk*
THOMAS F. RYBARCZYK
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**TABLE OF CONTENTS**

MEMORANDUM OF POINTS AND AUTHORITIES....................................1

I. INTRODUCTION....................................................1

II. FACTUAL BACKGROUND..............................................2

A. County Supervisor 1 Bribery Scheme..........................2

1. After Providing a Steady Stream of Cash and Benefits to County Supervisor 1, Defendant Asked for and Received County Supervisor 1's Vote on a Critical Issue affecting Defendant's Cannabis Farms..........................................3

2. County Supervisor 1 Protected Defendant's Businesses while He Received Cash and other Benefits from Defendant...............................4

B. Attempted Mayor 1 Bribery Scheme............................5

C. Defendant's Falsely Subscribed His Tax Returns..............6

III. THE UNITED STATES SENTENCING GUIDELINES CALCULATION............6

IV. A SENTENCE OF 27 MONTHS' IMPRISONMENT IS WARRANTED.............8

A. The Nature and Circumstances and Seriousness of the Offense, Seriousness of the Offense, and Just Punishment for Defendant....................................9

B. The History and Characteristics of Defendant...............12

C. Specific and General Deterrence............................12

1. Specific Deterrence...................................12

2. General Deterrence....................................13

V. CONCLUSION.....................................................15

# TABLE OF AUTHORITIES

## CASES

United States v. Ganim, 2006 WL 1210984 (D. Conn. May 5, 2006) .......................... 11

United States v. Martin, 455 F.3d 1227 (11th Cir. 2006) ................................ 8

United States v. Morgan, 635 F. App'x 423 (10th Cir. 2015) ............................ 14

United States v. Robles, 2015 WL 1383756 (C.D. Cal. Mar. 19, 2015) ..................... 12

United States v. Spano, 411 F. Supp. 2d 923 (N.D. Ill. 2006) .......................... 14

## STATUTES

18 U.S.C. § 666 ........................................ 1

18 U.S.C. § 3553 ....................................... 8

18 U.S.C. § 3553 ....................................... 8

26 U.S.C. § 7206 ....................................... 1

## UNITED STATES SENTENCING GUIDELINES

U.S.S.G. § 2C1.1 ....................................... 6

U.S.S.G. § 2D1.1 ....................................... 6

U.S.S.G. § 3D1.4 ....................................... 7

U.S.S.G. § 3E1.1 ....................................... 7

U.S.S.G. § 5K1.1 ..................................... 1, 7

U.S.S.G. § 2T1.1 ....................................... 7

**MEMORANDUM OF POINTS AND AUTHORITIES**

## I. INTRODUCTION

Defendant HELIOS RAPHAEL DAYSPRING ("defendant") had one goal: build a cannabis empire. To accomplish that goal, he would not let anything get in his way, including the law. His lofty ambitions drove him to bribe a San Luis Obispo County Supervisor with tens of thousands in cash to advance and protect his cannabis growing operations, offer to bribe a mayor for cannabis distribution permits, and conceal over $9 million in income on his tax returns. Defendant did this all with the intent to become the cannabis king of San Luis Obispo and Santa Barbara Counties.

After being confronted by federal law enforcement, defendant accepted responsibility for his actions and assisted the government in its investigation. For his conduct, defendant pled guilty to an Information charging him with one count of Federal Program Bribery, in violation of 18 U.S.C. § 666(a)(2), and one count of Subscribing to a False Income Tax Return, in violation of 26 U.S.C. § 7206(1).

For the reasons set forth below and in the government's separately filed motion pursuant to U.S.S.G. § 5K1.1, the government recommends a sentence of 27 months' imprisonment, which represents the low-end of the applicable United States Sentencing Guidelines ("Guidelines") range after applying the government's recommended downward variance and departure. The government also recommends three years of supervised release under the terms and conditions recommended by the United States Probation and Pretrial Services Office ("USPO") and that defendant be ordered to pay $3,438,793 in restitution to the IRS, a fine of $20,000, and a $200 special assessment.

## II. FACTUAL BACKGROUND

Defendant owned, operated, controlled, and/or had a financial stake in businesses specializing in cannabis cultivation and distribution in the County of San Luis Obispo ("County"), multiple farms that grew and cultivated cannabis in the County (collectively, "Cannabis Farms"), and businesses that sold cannabis commercially to the public, including a dispensary in Grover Beach, California ("Grover Beach Dispensary"). (Presentence Investigation Report ("PSR"), Dkt. 34, ¶ 13.)

### A. County Supervisor 1 Bribery Scheme

County Supervisor 1 was an elected member of the County's Board of Supervisors, which was compromised of five supervisors. As a County Supervisor, County Supervisor 1 voted on matters appearing before the County Board of Supervisors, including matters that affected defendant's Cannabis Farms, and had influence over matters occurring within the County and its departments. (PSR ¶ 14.)

Starting in the Fall of 2016 and continuing until at least the late Fall of 2019, defendant paid County Supervisor 1 nearly $30,000 in cash and other benefits, including free cannabis products. Defendant provided County Supervisor 1 this stream of benefits with the understanding that as opportunities arose, County Supervisor 1 would do, amongst other things, the following: (a) vote on cannabis legislation benefiting his Cannabis Farms, (b) advocate support of cannabis legislation benefiting defendant's Cannabis Farms to other public officials, and (c) disclose non-public County information concerning cannabis-related issues, all of which benefitted defendant and defendant's businesses. (PSR ¶ 15.)

1. After Providing a Steady Stream of Cash and Benefits to County Supervisor 1, Defendant Asked for and Received County Supervisor 1's Vote on a Critical Issue affecting Defendant's Cannabis Farms

One matter in which defendant sought County Supervisor 1's vote was in connection with the extension of an abeyance on enforcement action on cannabis growers, which would have included defendant's Cannabis Farms at the time, as the County considered those growers' applications, including defendant's applications, for permits to cultivate cannabis on the Cannabis Farms. In other words, defendant sought to ensure his Cannabis Farms could continue to operate, notwithstanding a county law prohibiting cannabis cultivation farms from operating without the appropriate county and state approvals. If the abeyances on enforcement action were to have lapsed, the County may have required the defendant's Cannabis Farms defendant purchased, controlled, and/or took an interest to shut down, resulting in significant financial losses to defendant well in excess of $5,000. (PSR ¶ 16.)

In December 2018, after providing County Supervisor 1 a steady stream of cash and other benefits, defendant called on County Supervisor 1 to take a vote in favor of his businesses and exclude other competitors. Specifically, defendant made clear to County Supervisor 1 – the man to whom he had paid thousands in cash – in a text message that "it's really important u guys extend the timeframe for submission and don't allow other people in yet" referring to the County's impending vote on December 11, 2018 to extend the abeyances on enforcement action against cannabis cultivators. Defendant further told County Supervisor 1 via text message that "[t]his affects all

the properties that I just got investment into every one of them. If I am not deemed complete and get accepted [conditional use permits] I don't get my ownership in the land." County Supervisor 1 understood defendant's request for his official action and responded: "Got it. We'll see what we can do. Extension of timeframe seems reasonable and probably no one else in until everyone has been deemed complete." Defendant responded that County Supervisor 1 was the "man." On December 11, 2018, the County's Board of Supervisors voted 5-0 to approve an extension of the abeyances with County Supervisor 1 seconding the motion and voting in favor of the resolution. On December 12, 2018, County Supervisor 1 reported that he performed defendant's request and told defendant via text message "[w]e extended abeyance yesterday" to which defendant replied: "Thank god . . .". (See PSR ¶ 21.)

2. County Supervisor 1 Protected Defendant's Businesses while He Received Cash and other Benefits from Defendant

During the period in which he received cash and other benefits from defendant, at the March 26, 2019 County Board of Supervisor's meeting, County Supervisor 1 took multiple actions to protect defendant's business interests as other supervisors sought to take pass legislation that would have hurt defendant's cannabis farms and defendant, County Supervisor 1's consistent cash provider. During that meeting, the Board of Supervisors took 16 straw votes relating to cannabis regulation. Amongst the straw votes taken during the meeting was a vote to ban all outdoor cannabis cultivation, which, if enacted, would have caused significant financial loss to defendant and the Cannabis Farms, many of which grew cannabis outdoors.

Throughout the meeting, County Supervisor 1 sent text messages to defendant and Employee 1, an employee of one of defendant's companies, updating them as the votes were taken. In particular, County Supervisor 1 explained how he had to work to prevent another County Supervisor from pushing the law banning all outdoor cannabis cultivation. At one point, County Supervisor 1 wrote that he "had to keep these fuckers [other County supervisors] from going way beyond and it is exhausting! Where's the industry [financial] support for my reelection??" to which defendant responded writing that "[w]e are the industry" and "[w]ere (sic) all [you] need lol." (PSR ¶ 25.)

On March 29, 2019, County Supervisor 1 sent defendant and Employee 1 a text message asking: "[t]omorrow is your favorite County Supervisor's birthday... what are you two [Cannabis] Kings gonna do for him???" (PSR ¶ 26.) Later, on April 6, 2019, County Supervisor 1 told defendant and Employee 1 that "[y]our industry should give me one giant French kiss wrapped in money after my work today." (PSR ¶ 27.)

**B. Attempted Mayor 1 Bribery Scheme**

Mayor 1 was the elected mayor Grover Beach ("the City"). As mayor, Mayor 1 voted on matters appearing before the City Council, including matters that affected defendant's dispensary businesses. Mayor 1 was also one of the two City council members on the City's subcommittee charged with overseeing the City's expansion of medical and commercial cannabis. (PSR ¶ 28.)

In 2017, the City began accepting applications from companies seeking to dispense medical cannabis. In 2018, the City allowed those companies that obtained dispensary permits to sell cannabis

commercially. Defendant sought permits for two dispensaries, including the Grover Beach Dispensary. (PSR ¶ 29.)

In September 2017, during a restaurant meeting between Mayor 1, defendant, and Business Partner 1, defendant offered Mayor 1 $100,000 in exchange for two City dispensary permits for which he applied. Mayor 1 did not respond to the offer. The City later awarded a single dispensary permit to the Grover Beach Dispensary. (PSR ¶ 30.)

**C. Defendant's Falsely Subscribed His Tax Returns**

On or about October 15, 2019, defendant caused his U.S. Individual Tax Return, Form 1040, for 2018, to be filed electronically with the IRS knowing that it contained materially false information, namely, on line 10, defendant falsely reported his taxable income was $1,262,894, when in fact, as defendant then knew, his actual taxable income in 2018 was more than $6.5 million. That amount resulted in a tax loss to the IRS of approximately $2,048,950. Defendant also concealed his income from the IRS for tax years 2014, 2015, 2016, and 2017. As a result of defendant's underreporting of his income in 2014 through 2018, defendant caused the IRS approximately $3,438,793 in lost tax revenue. (PSR ¶ 31.)

**III. THE UNITED STATES SENTENCING GUIDELINES CALCULATION**

As reflected in the plea agreement and PSR, the correct Guidelines calculation is as follows:

**Count One**

| | | |
|---|---|---|
| Base Offense Level: | 12 | [U.S.S.G. § 2C1.1(a)(2)] |
| Value of the Bribes (greater than $95,000 but less than $150,000): | +8 | [U.S.S.G. § 2C1.1(b)(2)] |
| Involved Elected Public Official: | +4 | [U.S.S.G. § 2D1.1(b)(12)] |

**Count Two**

| | | |
|---|---|---|
| Base Offense Level: | 22 | [U.S.S.G. §§ 2T1.1(a)(a), 2T4.1(I)] |
| Grouping | +2 | [U.S.S.G. § 3D1.4] |
| Acceptance of Responsibility: | -3 | [U.S.S.G. § 3E1.1][1] |
| Total Offense Level [before any variance or departure] | 23 | |

The government agreed in the amended plea agreement to move for a three-level variance if "defendant demonstrates an acceptance of responsibility for the offenses up to and including at the time of sentencing" for the "substantial assistance defendant provided to the government related to this investigation, but which cannot be accounted for pursuant to U.S.S.G. § 5K1.1." (Dkt. 25, ¶5.d.) This variance is substantially related to defendant and his counsel's assistance in helping the government calculate his taxable income. Assuming defendant continues to demonstrate acceptance of responsibility up and until his sentencing, his Total Offense level after accounting for this three-level downward variance would be 20. Additionally, for the reasons stated in the government's separately-filed motion pursuant to U.S.S.G. § 5K1.1 relating to defendant's cooperation, the government has moved for an additional two-level downward departure, bringing defendant's Total Offense level to 18.

Accordingly, based on a Total Offense Level of 18 and the fact that defendant falls in Criminal History Category I, the applicable Guidelines range is 27 to 33 months' imprisonment.

---

[1] The government hereby moves for a one-level decrease pursuant to U.S.S.G. § 3E1.1(b) and the plea agreement.

## IV. A SENTENCE OF 27 MONTHS' IMPRISONMENT IS WARRANTED

In determining a sufficient sentence, courts must consider the nature and circumstances of the offense, weigh the history and characteristics of each defendant, and impose a sentence that reflects the seriousness of the offense and provides just punishment. 18 U.S.C. §§ 3553(a)(1), (a)(2)(A). Any sentence must protect the public from future crimes, promote respect for the law, and afford adequate deterrence, 18 U.S.C. § 3553(a)(2), including general deterrence which is particularly important in public corruption and white-collar criminal cases like this one. See, e.g., United States v. Martin, 455 F.3d 1227, 1240 (11th Cir. 2006) ("Because economic and fraud based crimes are more rational, cool, and calculated than sudden crimes of passion or opportunity, these crimes are prime candidates for general deterrence. Defendants in white collar crimes often calculate the financial gain and risk of loss, and white collar crime therefore can be affected and reduced with serious punishment.") With these factors in mind, the government's recommended sentence -- 27 months in prison, followed by three years of supervised release -- is sufficient, but not greater than necessary, to adequately punish and deter.[2]

[2] The USPO recommended defendant receive a sentence of 36 months' imprisonment based on a Total Offense Level of 23 and Criminal History Category I. (Dkt. 33.) The USPO also recommended one-year of supervised release and that defendant pay restitution to the IRS in the amount of $3,438,793, a $20,000 fine, and a $200 special assessment. (Id.)

**A. The Nature and Circumstances and Seriousness of the Offense, Seriousness of the Offense, and Just Punishment for Defendant**

With respect to the nature and circumstances of the bribery offense, defendant paid cash bribes to a sitting a San Luis Obispo County Supervisor on multiple occasions, and he and his businesses benefited from those bribes. While defendant may argue that County Supervisor 1 started this corrupt relationship by soliciting cash from him, defendant realized he and his businesses could reap benefits from it. Ever the savvy entrepreneur, defendant took advantage of this corrupt relationship to cheat the system regulating the newly-legalized cannabis markets and put himself ahead of the competition. That is why defendant began requesting County Supervisor 1's vote for and support the continued abeyances on enforcement action related to cannabis farms, limit the number of competitors, and prevent other supervisors from banning outdoor cannabis growth. Contrary actions by the County Board of Supervisors could have significantly impacted defendant and his business operations and impeded his ability to expand his cannabis empire. In exchange for County Supervisor 1 performing these acts and protecting defendant's business interests, defendant provided a steady stream of benefits and kept County Supervisor 1 on retainer. As Business Partner 1 wrote in a June 25, 2019 email to another of defendant's business partners, County Supervisor 1 "is on [defendant]'s payroll. I know that for a fact." Business Partner 1 correctly summarized the arrangement. County Supervisor 1 was on defendant's payroll, receiving tens of thousands of dollars and performing tasks for defendant as directed.

Defendant's efforts to build his cannabis empire by corrupting the system were not limited to bribing County Supervisor 1. He wanted not one, but two distribution permits in Grover Beach to obtain significant control over the Grover Beach cannabis distribution market. To get it, defendant offered the mayor $100,000 in bribes for two distribution permits. While the mayor did not accept that bribe, defendant's intent was clear: defendant wanted those two permits and was willing to corrupt and cheat the system to get them.

Defendant's intent to use the political might he corruptly purchased to further his greed and ambition to build a cannabis empire was also made clear through his own words. In a January 25, 2020 text exchange with two other individuals in the cannabis industry, defendant wrote:

> I will lock up every city around grover [Beach] and isolate My competition to 1 town **i got my hands in the political cookie jar and will make sure the market remains a local one** if i sold in [city of San Luis Obispo] it would be Knowing it was enough cash to take down 5 more citys.

(emphasis added.)

Defendant's crimes extended beyond bribery to cheating on his taxes. In total, defendant cheated the government out of $3,438,793 from 2014 to 2018, most of that loss coming in 2017 and 2018 as defendant enlarged his cannabis empire. As defendant evaded taxes year after year, defendant's wealth grew exponentially. Having an additional $3.5 million at his disposal – money owed to the IRS – no doubt allowed defendant to have additional capital from which to draw on and expand his cannabis empire, a benefit not enjoyed by those who played by the rules.

Cheating the government out of millions of dollars of tax revenue that could be used for the benefit of other Americans is a serious offense. But the crime of bribery is especially pernicious and harmful to society. That is because, as many courts have recognized, it undermines the citizens belief and trust in their government. As one court explained:

> Government corruption breeds cynicism and mistrust of elected officials. It causes the public to disengage from the democratic process because . . . the public begins to think of politics as 'only for the insiders.' Thus corruption has the potential to shred the delicate fabric of democracy by making the average citizen lose respect and trust in elected officials and give up any hope of participating in government though legitimate channels.

United States v. Ganim, 2006 WL 1210984, at *5 (D. Conn. May 5, 2006).

Defendant paid County Supervisor 1 tens of thousands in cash to be an insider, cheat the system, gain an unlawful advantage over his competitors, and become what County Supervisor 1 referred to as a "[Cannabis] King[]," a mantle defendant himself recognized when he said he and his businesses were the cannabis "industry" in San Luis Obispo County. Doing so further shook the trust of the citizens of San Luis Obispo County in their government because County Supervisor 1 acted in the best interests of defendant, the man bribing him, and not the citizens who elected the supervisor to office.

Determining just punishment must weigh the seriousness of these offenses against defendant's cooperation and pre-indictment acceptance of responsibility. Defendant made himself and his counsel available to the government, waived his right to indictment by grand jury and agreed to proceed by a criminal information, and agreed to a fulsome factual basis at the request of the government. Taking these

factors into the equation, the government's recommended sentence of 27 months' imprisonment, the low-end of the applicable Guidelines range, is appropriate.

**B. The History and Characteristics of Defendant**

While defendant had at times a rough upbringing (PSR ¶¶ 82-89), he was able to overcome that challenge and make millions of dollars in the cannabis industry. But, as discussed above, in the process of making those millions, defendant also cheated the government out of tax money and, more importantly, deprived the citizens of San Luis Obispo of their right to honest governance and attempted to do the same in Grover Beach.

**C. Specific and General Deterrence**

One court from within this district observed within the last decade that "[c]orruption—an anathema to a democratic self-government—is far too prevalent." United States v. Robles, No. CR 04-1594-SVW, 2015 WL 1383756, at *8 (C.D. Cal. Mar. 19, 2015). Unfortunately, as evidenced by the number of federal prosecutions of individuals who have bribed and corrupted public officials for their own personal gain in this district, this observation still rings true today. This fact makes both specific and general deterrence all the more important in fashioning a sentence for defendant.

1. Specific Deterrence

As discussed above, defendant has accepted responsibility for his actions and done so preindictment, which suggests he may be less likely to engage in the same conduct moving forward. Nevertheless, even after the restitution payment and any associated fines he may be ordered to pay, defendant will still have significant financial resources. The PSR makes clear that defendant's chosen profession is

growing and distributing cannabis. Cannabis is what he knows, and he is good at growing and selling it. (PSR ¶¶ 117, 119-21.) There is no doubt it is industry to which he will return in some manner after a custodial sentence.

The problem is that the legal cannabis industry is one rife with corruption and opportunities for defendant's recidivism abound. See Mona Zang, How state marijuana legalization became a boon for corruption, Politico, (Dec. 27, 2020) https://www.politico.com/news/2020/12/27/marijuana-legalization-corruption-450529. The cannabis industry has historically been a cash industry, which makes the money in it difficult to track for the IRS but easy to use to bribe lawmakers and public officials who are now writing the laws regulating this newly-legalized industry. Accordingly, to ensure that defendant himself is sufficiently deterred from bribing public officials and further undermining the public's trust as well as cheating on his taxes again, the government believes a custodial sentence of 27 months is necessary to deter defendant reengaging in illegal activities.

2. General Deterrence

Even more important than specific deterrence in bribery cases is general deterrence. As one court observed:

> We need not resign ourselves to the fact that corruption exists in government. Unlike some criminal justice issues, **the crime of public corruption can be deterred by significant penalties that hold all offenders properly accountable**. The only way to protect the public from the ongoing problem of public corruption and to promote respect for the rule of law is to impose strict penalties on all defendants who engage in such conduct, many of whom have specialized legal training or experiences. Public corruption demoralizes and unfairly stigmatizes the dedicated work of honest public servants. **It undermines the essential confidence in our democracy and must be deterred if our country and district is ever to achieve the**

> **point where the rule of law applies to all — not only to the average citizen, but to all elected and appointed officials.**

United States v. Spano, 411 F. Supp. 2d 923, 940 (N.D. Ill. 2006), affirmed, 477 F.3d 517 (7th Cir. 2006) (emphasis added); see also United States v. Morgan, 635 F. App'x 423, 450 (10th Cir. 2015) (reversing district court's decision to impose probation in a bribery case, remanding for re-sentencing, and observing that "[g]eneral deterrence comes from a probability of conviction and significant consequences. If either is eliminated or minimized, the deterrent effect is proportionately minimized. . . . [Democracy's] proper functioning requires elected officials to serve the common good, not illicit personal gain. Our citizens place faith in the honesty and integrity of elected officials. Without meaningful consequences for a breach of trust, their trust is no more than blind trust. Congress has recognized as much. Deterrence is a crucial factor in sentencing decisions for economic and public corruption crimes such as this one.")

Imposing the government's recommended sentence of 27 months' imprisonment is important to deter those similarly situated to defendant - individuals seeking to gain an advantage in the corrupt world of legal cannabis. Imposing a short term of custody under these facts would send the wrong signal to others who may be tempted to follow defendant's corrupt path.

For these reasons, any substantial deviation from the government's recommended sentence here would undercut the deterrent purpose of sentencing and embolden future crimes. The imposition of a meaningful sentence in this case — one undoubtedly being observed

by others in the cannabis industry — will serve an important public purpose.

**V. CONCLUSION**

For the aforementioned reasons, the government respectfully requests that the Court sentence defendant to a total of 27 months' imprisonment, followed by three years of supervised release under the conditions recommended by the USPO, and order defendant to pay $3,438,793 in restitution to the IRS, a fine of $20,000, and a $200 special assessment.