FILED
CLERK, U.S. DISTRICT COURT
5/17/2022
CENTRAL DISTRICT OF CALIFORNIA
BY: ___CB___ DEPUTY

TRACY L. WILKISON
United States Attorney
SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division
THOMAS F. RYBARCZYK (Cal. Bar No. 316124)
Assistant United States Attorneys
Public Corruption and Civil Rights Section
    1500 United States Courthouse
    312 North Spring Street
    Los Angeles, California 90012
    Telephone: (213) 894-8452
    Facsimile: (213) 894-0141
    E-mail:    thomas.rybarczyk@usdoj.gov

Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA, | No. CR 21-343-AB |
|---|---|
| Plaintiff, | GOVERNMENT'S MOTION FOR DOWNWARD DEPARTURE UNDER U.S.S.G. § 5K1.1 |
| v. | (UNDER SEAL) |
| HELIOS RAPHAEL DAYSPRING, aka "Bobby Dayspring," | Hearing Date: May 27, 2022<br>Hearing Time: 1:30 p.m.<br>Location: Courtroom of the Hon. André Birotte Jr. |
| Defendant. | |

    Plaintiff United States of America, by and through its counsel of record, the United States Attorney for the Central District of California and Assistant United States Attorney Thomas F. Rybarczyk, hereby files its Motion for Downward Departure under U.S.S.G. § 5K1.1 with respect to defendant HELIOS RAPHAEL DAYSPRING.

    The government's sentencing position is based upon the attached memorandum of points and authorities, its separately-filed sentencing position, the Presentence Investigation Report, the files and records

in this case, and such further evidence and argument as the Court may permit.

Dated: May 13, 2022

Respectfully submitted,

TRACY L. WILKISON
United States Attorney

SCOTT M. GARRINGER
Assistant United States Attorney
Chief, Criminal Division

*/s/ Thomas Rybarczyk*
THOMAS F. RYBARCZYK
Assistant United States Attorney

Attorneys for Plaintiff
UNITED STATES OF AMERICA

**MEMORANDUM OF POINTS AND AUTHORITIES**

On October 22, 2021, pursuant to a written plea agreement, defendant HELIOS RAPHAEL DAYSPRING ("defendant") pleaded guilty to an Information charging him with one count of Federal Program Bribery, in violation of 18 U.S.C. § 666(a)(2), and one count of Subscribing to a False Income Tax Return, in violation of 26 U.S.C. § 7206(1).

Pursuant to U.S.S.G. § 5K1.1,[1] the government requests that the Court apply a two-level downward departure based upon defendant's provision of additional information concerning the bribes he paid to a San Luis Obispo County Supervisor ("County Supervisor 1").

**I.  Applicable Law**

Section 5K1.1 of the Guidelines permits the government to move the Court for a downward departure at sentencing for a defendant who has "provided substantial assistance in the investigation or prosecution of another person who has committed an offense." The Guidelines list a number of factors on which a court may base such a departure. U.S.S.G. §§ 5K1.1(a)(1)-(5). Application Note 3 also provides that "[s]ubstantial weight should be given to the government's evaluation of the extent of the defendant's assistance, particularly where the extent and value of the assistance are difficult to ascertain."

**II.  Factual Background Regarding Cooperation**

   **A.  The FBI and IRS Search Defendant and His Residence**

Prior to defendant meeting with the government, the government had obtained search warrants for defendant's person and residence,

---

[1] The government has filed a public sentencing position referencing this motion. The government hereby incorporates the factual summary detailed in that position.

based in part, on evidence that defendant had paid between $30,000 and $40,000 in cash bribes to County Supervisor 1 in exchange for favorable action in connection with his cannabis operations and offered $100,000 in bribes the Mayor of Grover Beach for two cannabis dispensary permits.

After executing those search warrants in March 2020, defendant and his counsel quickly signaled an intent to cooperate with the government's investigation and brought defendant in for a lengthy proffer session in June 2020. Prior to that proffer session, defendant's counsel obtained text message exchanges from one of defendant's employees ("Employee 1" in the amended plea agreement) and provided those messages to the government prior to defendant's proffer. The text messages revealed discussions between Employee 1 and defendant regarding County Supervisor 1 and discussions between defendant, Employee 1, and County Supervisor 1 about County Supervisor 1's solicitation for cash and donations and County Supervisor 1's efforts to protect defendant's business interests.

### B. Defendant's June 2020 Proffer Interview

During the proffer meeting on June 12, 2020, defendant provided additional information concerning the cash payments he made to County Supervisor 1, namely, the timing of those payments, the approximate amounts, and the manner and place in which he provided those payments. Although the government had evidence of a text message conversation between defendant and County Supervisor 1 where it appeared defendant had asked for County Supervisor 1's assistance with a vote, defendant would not state that he provided these cash payments in exchange for County Supervisor 1's vote or influence on any issue before the County. Defendant stated that he did tell

County Supervisor 1 how he felt about particular pieces of County cannabis legislation and/or regulations and how that may affect defendant's business.

During the proffer session, defendant also largely corroborated evidence the government collected concerning defendant's attempt to bribe the Grover Beach mayor with $100,000 for two cannabis dispensary licenses. Defendant added color concerning the exchange and provided additional information concerning Business Associate 1's intent to bribe the mayor with $100,000 during that meeting, which, to date, the government has been unable to corroborate.

**C. Defendant's Proactive Effort to Cooperate**

Shortly after the proffer meeting, in July 2020, defendant, through his defense counsel, informed the government that a public official in Santa Barbara County may attempt to solicit a bribe from defendant, who at the time was still seeking to open a cannabis dispensary in that county. At the FBI's direction, the defendant recorded a meeting with the public official but no solicitation of a bribe occurred during the meeting, and the FBI did not pursue the matter further.[2]

---

[2] In addition to this request for a two-level downward departure, pursuant to the plea agreement, the government agreed "provided that defendant demonstrates an acceptance of responsibility for the offenses up to and including the time of sentencing, recommend a three-level downward variance. This variance is based upon substantial assistance defendant provided to the government related to this investigation, but which cannot be accounted for pursuant to U.S.S.G. § 5K1.1." (Dkt. 25, ¶ 5.d.)

3

**D. County Supervisor 1 Dies and Defendant Later Signs a Plea Agreement**

In August 2020, County Supervisor 1 was found dead in his residence. An autopsy later determined that County Supervisor 1 killed himself.

On June 24, 2021, defendant and his defense counsel returned a signed plea agreement to the government, which the government publicly filed along with the Information the following month. As part of that plea agreement and the later filed amended plea agreement, defendant agreed to testify, though, at the time, there were no pending proceedings at which defendant could testify.

**III. Defendant's Cooperation Merits a Two-Level Departure**

**A. Significance, Usefulness, and Timeliness of Cooperation, § 5K1.1(a)(1), (5)**

Once confronted with the reality that the government had sufficient evidence to obtain a warrant to search him and his residence, defendant, through the help of his capable counsel, came to the quick determination that it was in his best interest to cooperate with the investigation. Defendant then met with the government and provided additional information concerning his cash payments to County Supervisor 1, particularly concerning the date and location of the cash payments. That information was of substantial assistance to the government because the government was able to corroborate some meetings through of where defendant said he provided County Supervisor 1 cash through searching County Supervisor 1's digital devices. Further, at the time defendant provided this information, it was useful to the government because it had every

4

intention of proceeding with a prosecution of County Supervisor 1 prior to his untimely passing in August 2020.

Nevertheless, had the government proceeded with bribery charges against County Supervisor 1 involving the payments made by defendant, defendant's credibility would have been a central, and perhaps problematic, issue at trial. Defendant did not state during the meeting that he gave the steady stream of benefits to County Supervisor 1 explicitly or implicitly in exchange for action in support of his cannabis operations, which would have posed problems for defendant's credibility on the stand. That is especially true based on this text exchange which came while defendant was providing County Supervisor 1 a stream of benefits:

| Sender | Recipient | Date | Message |
|---|---|---|---|
| Defendant | County Supervisor 1 | 12/10/2018 | [County Supervisor 1] it's really important u guys extend the timeframe for submission and don't allow other people in yet |
| Defendant | County Supervisor 1 | 12/10/2018 | I hired [a consultant] almost 9 months ago to start work on all my projects we currently have 1 deemed complete by the county all others keep getting fix it letters |
| Defendant | County Supervisor 1 | 12/10/2018 | This affects all the properties that I just got investment into every one of them |
| Defendant | County Supervisor 1 | 12/10/2018 | If I am not deemed complete and get accepted cups I don't get my ownership in the land |
| Defendant | County Supervisor 1 | 12/10/2018 | I've been pushing [the consultant's] Office as hard as I can without going over the line I know she is extremely influential with the county and I'm treading as lightly as possible |

| Sender | Recipient | Date | Message |
|---|---|---|---|
| County Supervisor 1 | Defendant | 12/10/2018 | Got it. We'll see what we can do. Extension of timeframe seems reasonable and probably no one else in until everyone has been deemed complete |
| Defendant | County Supervisor 1 | 12/10/2018 | Sweet u that man |
| Defendant | County Supervisor 1 | 12/10/2018 | The man |
| Defendant | County Supervisor 1 | 12/10/2018 | All we gotta do is talk about hemp and we're good |

Later, on December 12, 2018, defendant and County Supervisor 1 had further discussion on defendant's request for this vote:

| Sender | Recipient | Date | Message |
|---|---|---|---|
| Defendant | County Supervisor 1 | 12/12/2018 | How's the pooch |
| County Supervisor 1 | Defendant | 12/12/2018 | CBD oil keeps her going! |
| County Supervisor 1 | Defendant | 12/12/2018 | We extended abeyance yesterday |
| Defendant | County Supervisor 1 | 12/12/2018 | Thank god what happened with newbies coming in |

Defendant's position ultimately changed and he accepted the fact that he bribed County Supervisor 1 but only after the government produced preindictment discovery, including the above text exchange seized from County Supervisor 1's digital device.  This exchange occurred as defendant continued to provide County Supervisor 1 a steady stream of cash payments and other benefits, including cannabis products and dinners at expensive restaurants.  While defendant ultimately accepted responsibility for his bribery, his initial refusal to accept that understanding would have posed significant issues at any trial of County Supervisor 1 and thereby limited the value of his testimony.

**B. Truthfulness, Completeness, and Reliability of Information, § 5K1.1(a)(2)**

Defendant's statements concerning the approximate amount of cash paid and other benefits he provided to County Supervisor 1 were largely corroborated by other evidence the government had already obtained about defendant's bribe payments to County Supervisor 1. His statements concerning his effort to attempt to bribe the Grover Beach mayor were similarly credible but also something of which the government was aware before searching defendant and his residence.

Defendant stating that he did not provide cash payments to County Supervisor 1 in an either explicit or implicit quid pro quo exchange for official action during his meeting with the government does raise questions about his veracity and would, as discussed above, potentially impair his usefulness as a trial witness.

**C. Nature and Extent of Defendant's Cooperation and Any Injury Suffered, or Any Danger or Risk of Injury to Defendant or his Family Resulting from Assistance, § 5K1.1(a)(3), (4)**

In addition to providing information during the proffer and agreeing to testify in his plea agreement, defendant made one recording of a conversation where he believed he would be solicited for a bribe. While the government acknowledges the value of defendant's effort, the information provided by defendant and the recording generated no evidence of criminal activity and therefore cannot be considered substantial assistance to the government.

Any financial injury defendant experienced after his plea agreement was announced would have resulted whether or not defendant cooperated in the government's investigation and should not be

7

considered in determining the significance of defendant's substantial assistance under § 5K1.1(a)(4).

In October 2021, the FBI obtained hearsay information of an unspecified threat that defendant's life may be in danger because of his cooperation with the government. The FBI could not substantiate the threat but promptly offered to make itself available to defense counsel and defendant should any concern arise.[3] Given the unspecified nature of the threat and the information defendant provided, the government does not believe the threat was a credible one. The government nevertheless acknowledges the anxiety defendant and his loved ones may have suffered during that time.

**IV. CONCLUSION**

For the aforementioned reasons, the government respectfully requests that the Court grant the government's motion for a two-level downward departure pursuant to U.S.S.G. § 5K1.1.

---

[3] The defendant provided the FBI and other law enforcement authorities with information concerning other potentially dangerous activity he or others around him witnessed. The FBI was unable to substantiate those reports.